DECISION
In this original action, relator, Georgia Kilgore, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
On August 15, 1979, relator was injured in the course and scope of her employment as a waitress with respondent-employer, McCrory Corporation. Relator's claim for workers' compensation benefits was subsequently allowed for "lumbar ligamentous strain; herniated nucleus pulposus L4-5, nerve root adhesions; lumbar disc displacement; lumbar radiculopathy; [and] degenerative disc disease lumbar spine L4-5." Relator, forty-nine years old at the time of her injury, has not worked since the injury.
Relator underwent a lumbar laminectomy in September 1979, and a lumbar L-5 nerve root foraminotomy in June 1981. Two years after the 1981 surgery, relator was examined by commission specialist, Jack D. Hutchinson, D.O., who opined that while relator could not return to employment as a waitress, she could perform sedentary work. In 1986, relator was examined by commission specialist, D. D. Kackley, who opined that relator would be capable of performing various types of sustained remunerative employment if made available to her and if she was motivated to do so.
On March 6, 1998, relator filed an application for permanent total disability ("PTD") compensation. On the application, relator stated that she completed the eighth grade, and can read, write and do basic math, although "not well."
Relator was examined on November 3, 1998, by commission specialist, Timothy J. Fallon, M.D. Dr. Fallon also completed an occupational activity assessment report. On December 22, 1998, Caroline Wolfe, a vocational expert, completed an employability assessment report at the commission's request. Ms. Wolfe's and Dr. Fallon's reports are discussed in the commission's order at issue.
In support of her application, relator submitted a vocational report from vocational expert, Steven S. Rosenthal, who opined that relator is PTD based upon the medical and nonmedical factors.
Following a March 23, 1999 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The order states, in pertinent part:
 This order is predicated upon those reports incorporated by reference within the text of this order.
 Claimant is a 68 year old female with a 9th grade education but an ability to read, write and do basic math. Claimant testified that she can read a newspaper and does read a bible regularly. Her relevant work history is the 26 years she was employed as a waitress/cook. Claimant has received Social Security Benefits since 08/1983 (at age 53) and she has twice previously applied for Permanent Total Disability Benefits. Both attempts failed. Claimant did undergo two surgeries secondary to the 1979 injury; a laminectomy on 09/11/1979 then again on 06/16/1981. An exam was done on the Commission's behalf by Dr. Timothy Fallon, M.D., a physiatrist [sic] on 11/03/1998. Dr. Fallon estimated that claimant sustains a 25% permanent partial impairment due to her injuries and that she would be capable of sedentary employment (i.e. a 10 lb. weight lifting restriction). Dr. Fallon also noted that claimant "*** indicates she had declined participation in rehabilitation as she did not feel that her nerves would allow it." Notably, Dr. Fallon did not himself indicate that claimant would be precluded from participating in a rehabilitation program. Further, in his Occupational Activity Assessment (also dated 11/03/98) Dr. Fallon opines that claimant can sit up to three hours a day and stand or walk 3-5 hours per day. A combination of these three on a daily basis would clearly permit claimant to pursue even full-time employment. Further, Dr. Fallon finds few restrictions on claimant's ability to use her upper extremities.
 An employability assessment report on the Commission's behalf was done by Ms. Caroline Wolfe on 12/22/1998. She finds that although claimant's age may be a barrier, the unskilled sedentary work that she would be physically capable of performing should not be difficult to adapt to and that such jobs do not require more reading or math ability than that which she needed in her previous positions. Ms. Wolfe goes on to indicate that claimant currently is not a good candidate for formal rehabilitation or training but that the jobs for which she is physically capable of doing will permit her to learn on-the-job.
 Significantly, Ms. Wolfe found the following negative elements that would affect claimant's employability: 1) the fact that claimant has received $670.00 per month social security since 1983 which may be a disincentive to returning to work. 2) claimant's statement to Dr. Fallon referenced earlier in this order regarding her inability to participate in rehabilitation because of her "nerves." 3) the fact that claimant has twice before applied for Permanent Total Disability Benefits. The Staff Hearing Officer finds that these factors belie a long-standing lack of a desire or intent to return to the work force, contrary to claimant's testimony. Further evidence of this is that claimant was only 49 when originally injured. Even after her second surgery claimant was still only 51. Clearly, her injuries were
significant, requiring surgery twice. But the Staff Hearing Officer could find no persuasive medical evidence indicating that claimant was physically precluded at that time, or now, from participating in rehabilitation. There is no evidence in file, nor was any offered at table, that claimant ever sought rehabilitation, retraining or remediation, especially early on, when claimant had youth and time on her side. These conclusions are particularly compelling when one considers medical opinions throughout the history of claimant's file which indicate a remarkable stability in claimant's physical presentation over the years. Consider the 08/23/1983 (two years post-second surgery) opinion of Dr. Jack Hutchison. It reads: "It would seem that she could do some type of work which could be done primarily in a sitting position, but would have the freedom to get up and move about for short periods several times throughout an 8 hour shift." Dr. Hutchison opined a 65% permanent partial impairment. Six years later, the 01/03/89 opinion of Dr. D.D. Kackley who found a 20% impairment and indicated that claimant was "capable of resuming various types of sustained remunerative employment activity if made available to her and she was so motivated." The conclusions of these examiners compare favorably to the 1998 findings of Dr. Fallon who also found that claimant sustained a 25% permanent partial impairment especially when considering that the only substantive aspect to change in claimant's presentation then from now is that she has aged. Pursuant to the Ohio Supreme Court case of State ex rel. B.F. Goodrich v. I.C., (1995), 73 O.S. 3rd 525, the Commission may consider not only claimant's past employment skills, but those skills which could reasonably have been developed had claimant made the effort. In the case subjudice, the claimant has not taken the initiative to pursue work for which she was physically able to perform even though she has had the time to do so, nor has she made any efforts to enhance her employability even though there is also no persuasive evidence to reasonably suggest that she was physically or mentally precluded from doing so over that time. [Emphasis sic.]
On May 3, 1999, relator filed this original action seeking a writ of mandamus ordering the commission to vacate its order denying her PTD application, and to enter an order granting such compensation.
Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court, who examined the evidence and issued a decision, including findings of fact and conclusions of law. The magistrate concluded that the commission did not abuse its discretion in denying PTD compensation to relator because its stated basis for doing so, i.e., that despite medical evidence that relator was medically able to perform sustained remunerative employment, she made no attempt, over the many years she had to do so, to enhance her employability, through rehabilitation, retraining or remediation, was supported by evidence in the record. Accordingly, the magistrate recommended that this court deny the requested writ. Relator has filed objections to the magistrate's decision. The matter is now before this court for a full, independent review.
By her objections, relator challenges the magistrate's reliance on State ex rel. Wilson v. Indus. Comm. (1997), 80 Ohio St.3d 250, and State ex rel. Wood v. Indus. Comm. (1997), 78 Ohio St.3d 414, arguing that they are factually distinguishable and, thus, inapplicable to the instant case.
In Wilson, the claimant was thirty-seven years old at the time he was injured in 1981, had a ninth grade education, and had worked as a "carpenter, stripminer, forklift operator, pipe layer and maintenance man." The commission's Rehabilitation Division evaluated the claimant in 1988, found him to have rehabilitation potential, and offered to set up an individualized rehabilitation program for him. The claimant, however, failed to respond to the Rehabilitation Division's efforts. In 1990, the commission denied claimant's PTD application, stating:
 * * * Dr. Reynolds found the claimant capable of sedentary and light work. Considering the claimant's young age (47) and 9th grade education it would appear he has the time and education needed to retrain. He would also have the time to improve his educational [cap]abilities. Further, the Rehabilitation Division, after physical and vocational evaluations, found the claimant to have rehabilitation potential. * * * [Id. at 252.]
In upholding the commission's order, the Wilson court stated:
 In its nonmedical analysis, the commission, mentioning claimant's relatively young age, concentrated on future rather than current skills. This is the proper focus for such an analysis. As the Franklin County Court of Appeals wrote in an earlier decision, the relevant vocational inquiry is "whether the claimant may return to the job market by using past employment skills or those skills which may be reasonably developed." State ex rel. Speelman v. Indus. Comm. (1992), 73 Ohio App.3d 757, 762, 598 N.E.2d 192, 195.
 The commission found that claimant's age afforded him the opportunity to improve the educational deficits on which he so heavily relies in asserting that he is incapable of sustained remunerative employment. Reduction or elimination of these deficits, in turn, would facilitate the acquisition of new skills. We not only sustain the commission's reasoning, but feel compelled to add an observation of our own.
 Not only does claimant have the opportunity to improve his reemployment potential, he has had this opportunity for the sixteen years he has not worked since his injury. Despite the fact that claimant was only age thirty-seven when injured, there is no evidence that claimant ever made an effort to pursue remedial education or obtain his G.E.D. The record does reflect that claimant did not respond when contacted by the commission's Rehabilitation Division about establishing a rehabilitation plan.
 We view permanent total disability compensation as compensation of last resort, to be awarded only when all reasonable avenues of accomplishing a return to sustained remunerative employment have failed. Thus, it is not unreasonable to expect a claimant to participate in return-to-work efforts to the best of his or her abilities or to take the initiative to improve reemployment potential. While extenuating circumstances can excuse a claimant's nonparticipation in reeducation or retraining efforts, claimants should no longer assume that a participatory role, or lack thereof, will go unscrutinzied. [Id., at 253-254.]
Relator argues that, unlike the claimant in Wilson, she was never offered rehabilitation or retraining after her injury in 1979. Initially, we note that the record contains evidence that relator was offered rehabilitation services, but refused to take advantage of such services. In his November 11, 1998 report, Dr. Fallon notes that relator declined participation in rehabilitation services because her "nerves would not allow it." Further, relator cites no law to support her contention that if the commission does not offer a claimant rehabilitation services, the claimant is excused from taking the initiative to improve his or her reemployment potential. Contrary to relator's claim, Wilson
makes it very clear that in its nonmedical analysis, the commission may consider those skills which could reasonably have been developed had the claimant made the effort. Thus, the Wilson
court places the onus for improving reemployment potential, whether through improving educational deficits or participating in rehabilitation or retraining services, squarely on the claimant, irrespective of whether the commission offers rehabilitation services.
Relator further contends that the record contains no evidence to suggest that had relator engaged in rehabilitation retraining services, such effort would have made her more employable. Specifically, relator argues that the only evidence in the record that speaks to the subject of her rehabilitation potential is Ms. Wolfe's vocational report, which concludes that relator is not a good candidate for formal rehabilitation or training. We disagree.
Initially, we note that relator cites no law to support the proposition that the commission must produce evidence that rehabilitation or retraining will benefit a claimant by making them more employable. Further, although Ms. Wolfe does state in her report that relator would not be a good candidate for formal
rehabilitation or training, she indicates that relator could easily adapt to unskilled sedentary work, via on-the-job training, that does not require more reading or math ability than that which she needed in her previous employment.
We also find unpersuasive relator's attempts to distinguish the instant case from the Wood case cited by the magistrate. In Wood, the claimant was thirty-nine years old at the time of the injury, had a twelfth grade education, and was forty-six when he was denied PTD compensation. In its order, the commission stated, in part:
 Claimant is 45 [sic] years old and has a 12th grade education. * * * Considering claimant's young age and high school education, the Commission determines claimant is reasonably qualified to successfully undergo sedentary skills training and subsequently be reemploy[ed.] * * * [Id. at 417.]
The court upheld the commission's order, stating in relevant part:
 * * * The commission found that claimant, while not currently possessing transferable skills, had the capacity, based on his age and education, to acquire new skills. This is not an abuse of discretion. Claimant was only forty-six when permanent total disability compensation was denied. Clamaint has? and has had? plenty of time to learn new skills. There is no evidence that in the eleven years since claimant last worked, he has made any effort to enhance his employability, despite the fact that he was only thirty-nine when he exited the work force. Moreover, claimant is only fifty now, giving him ample opportunity to gain new skills. * * * [Id. at 418.]
Relator contends that the commission's finding that the claimant had the capacity to acquire new skills due to his young age and twelfth grade education does not apply to the instant matter because relator was already forty-nine years old at the time she suffered the industrial injury, sixty-eight years old when her PTD application was denied, and never had a high school education.
We note that while the Wood court sustained the commission's basis for denying PTD compensation, the court further reasoned that PTD should be denied because the claimant had not made any effort to enhance his employability in the eleven years following his industrial injury. Similarly, as noted by the commission in the instant case, no evidence suggests that relator, only forty-nine years old at the time she was injured, ever took the initiative to pursue employment for which she was physically able to perform, or made any effort to enhance her employability in the nineteen years following her industrial injury. Accordingly, we are unpersuaded by relator's contention that the magistrate's reliance on Wood is misplaced.
Relator further argues that a third case cited by the magistrate, State ex rel. Bowling v. Natl. Can Corp. (1996),77 Ohio St.3d 148, sets forth a "vague" standard that does not afford a worker's compensation claimant "any guidance as to what steps he or she must take to meet his or her burden of proof in a PTD case."
In Bowling, the court upheld the commission's denial of a claimant's PTD application. At the time of the hearing, the claimant was sixty-six years of age and had a fifth grade education. He had worked as a "floorman," "trucker" and machine operator. The commission relied upon the report of Dr. Kackley, who found claimant to be capable of light and sedentary work activity. The commission's order stated in part:
 * * * [H]e was able to work with his allowed physical injuries until the plant closed down in 1974. Further in 1974, the claimant would have been only 47 years old. He has now had 19 years in which to improve his educational skills and retrain for light or sedentary work. There is no evidence of any attempts to do so. Nor is there any evidence on file that he lacked the ability to further educate himself or retrain. The claimant, not the Commission, has the burden of proof. *** Considering the lack of vocational evidence showing the claimant was unable to further educate and retrain after he last worked, it is found the claimant has not met his burden of proving such was not possible. Therefore, his current limited education and older age are not found to be factors supporting disability. * * * [Id. at 152.]
Upholding the commission's order, the Bowling court stated:
 The commission's independent review of claimant's nonmedical factors determined that claimant's age, education and work history, while not entirely favorable, were not insurmountable barriers to re-employment. The commission stressed the claimant's failure to make any effort to enhance his re-employment prospects.
 The commission — as we do — demands a certain accountability of this claimant, who, despite the time and medical ability to do so, never tried to further his education or to learn new skills. There was certainly ample opportunity. At least fifteen years passed between the plant closure and claimant's application for permanent total disability compensation, and clamant was only age forty-seven when the plant shut down. Under these circumstances, we do not find that the commission's decision constituted an abuse of discretion. [Id. at 153.]
Contrary to relator's argument, we do not find the standard set forth by the Bowling court, i.e., that a workers' compensation claimant will be held accountable for his or her failure to make reasonable efforts to enhance his or her re-employment potential, to be at all vague, especially given the consistency with which the court has held to this standard. The court has consistently held that PTD benefits should be viewed as compensation of last resort, reserved for the most severely disabled workers, and to be awarded only when all reasonable efforts of accomplishing a return to sustained remunerative employment have failed. See Wilson, supra; State ex rel. B.F.Goodrich Co. v. Indus. Comm. (1995), 73 Ohio St.3d 525; State exrel. Paraskevopoulos v. Indus. Comm. (1998), 83 Ohio St.3d 189.
Contrary to relator's hypothetical, neither the commission nor the courts would ever require a claimant such as relator, with such limited education and academic potential, to produce evidence that she was pursuing a college degree in order to enhance her employability. Placing such a burden on relator would clearly violate the standard set forth in Wilson, Goodrich,
and Bowling; i.e., that a claimant must take the initiative to improve re-employment potential by making all reasonable efforts
to participate in return-to-work activities, to the best of his orher abilities.
Neither the commission nor the magistrate suggest that relator was expected to enhance her employability by pursuing unreasonable avenues of accomplishing a return to sustained remunerative employment. Rather, the commission and the magistrate merely found that no evidence suggested that relator made any reasonable efforts to enhance her employability over the nineteen years following her injury. Despite her admitted academic abilities in reading, writing and basic math, relator made no effort to obtain a general equivalency diploma ("GED"). Further, she did not participate in, or even seek out, any type of rehabilitation, retraining or remediation, despite the fact that she was only forty-nine years old when she exited the workforce and was not physically or mentally precluded from doing so. Accordingly, we find that the commission did not abuse its discretion in denying relator's application for PTD compensation.
Based upon a thorough examination of the magistrate's decision, in addition to an independent review of the commission's order, the record, and the objections filed by relator, we find the magistrate properly determined the pertinent facts and applied the salient law to them. Thus, this court overrules relator's objections and adopts the magistrate's decision as its own, including the findings of fact and conclusions of law contained therein. Therefore, in accordance with the magistrate's decision, this court hereby denies relator's request for a writ of mandamus.
Objections overruled; writ denied.
BROWN and McCORMAC, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.