The STATE ex rel. SPEELMAN

v.

INDUSTRIAL COMMISSION OF OHIO et al.

[Cite as *State ex rel. Speelman v. Indus. Comm.* (1992), 73 Ohio App.3d 757.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–843.

Decided April 28, 1992.

758

*Gallon & Takacs Co., L.P.A.,* and *Theodore A. Bowman,* for relator.

*Lee I. Fisher,* Attorney General, and *Merl H. Wayman,* for respondent Industrial Commission of Ohio.

*Schottenstein, Zox & Dunn, Robert D. Weisman* and *William J. Barath,* for respondent DeVilbiss Company.

*Per Curiam.*

Relator, Loredana Speelman, filed this action in mandamus seeking a writ ordering respondent Industrial Commission of Ohio ("Industrial Commission") to vacate its order denying her permanent total disability compensation and ordering the Industrial Commission to enter an amended order which specifically set forth the basis for its decision, in compliance with *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245.

The action was referred to a referee of this court pursuant to Loc.R. 11, Section 13, and Civ.R. 53. On December 13, 1991, the referee rendered a report recommending that a writ of mandamus be issued in accordance with relator's request. Both respondents filed objections to the report of the referee.

Speelman is a middle-aged woman who never completed high school, who has no special vocational skills, and who historically has been employed as an unskilled laborer. She was working for the DeVilbiss Company as a press operator when she was injured in 1980. Over nine years later, she applied for compensation for permanent and total disability.

At the time it made its decision on the application, the Industrial Commission had six reports before it, all generated within two and one-half years of the hearing. The reports were two psychological/psychiatric reports, one neurological report, one orthopedic report and two "combined effects" reports. The two combined effects reports were generated by specialists who reviewed the claim file, while the balance of the reports were derived as a result of actual examinations of the claimant.

Both psychological/psychiatric reports indicated that Speelman was permanently and totally unable to engage in sustained remunerative employment. The neurological report said she could return to her former job. The orthopedic report said she could not return to her old job, but that she could engage in some sort of unspecified sustained remunerative employment. The one "combined effects" claim file review indicated that relator was "quite capable of returning to her former position of employment[,]" while the other review indicated that she was *not* able to return to her former position of employment. The latter review indicated that Speelman could engage in some form of remunerative employment, but the employment would have to be sedentary, non-demanding physical work, with minimal stress, concentration and intellectual effort. No examples of jobs which involve minimal effort, minimal stress, minimal concentration, and minimal intellectual effort were provided.

The order of the Industrial Commission denying permanent and total disability compensation claimed to rely "particularly" upon all the above

reports except one of the two psychological/psychiatric reports. The order acknowledged that three of the reports upon which the Industrial Commission relied indicated that Speelman could go back to her former employment while two of the reports said she could not. Four of the five reports indicated that Speelman could do some form of sustained remunerative employment, although the report which said she could not was the remaining psychological/psychiatric report. The order recited that it had considered all the factors required by *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 31 OBR 369, 509 N.E.2d 946, but the recitation is unconvincing, given the utter lack of factual findings to correspond to the alleged consideration and the absence of linking the *Stephenson* factors to Speelman's employability.

Given the hodge-podge of conflicting reports in this case, it is not our function to make the final determination as to whether Speelman is or is not permanently and totally disabled. That determination is ultimately for the Industrial Commission. However, we must insist that both the spirit and letter of *State ex rel. Noll* be followed so that both the injured workers of the state and their former employers can be convinced that their causes are fully and carefully heard before the Industrial Commission, and that an intelligent and intelligible decision is rendered.

■ The order of the Industrial Commission reflects its uncertainty in what is to be done in deciding a permanent total disability case remanded for compliance with the directives of *State ex rel. Noll.* It appears that what is being done is to address as many possibilities as are available to support the order in a somewhat less than clear fashion, hoping that one of them will stick. Since we realize that part of the problem is the lack of clarity provided by the Ohio Supreme Court and this court in how to go about deciding whether permanent total compensation is available, we hope that some valuable guidance will be offered so that in the future orders may be clear and the cases will not need to be remanded again. In complying with *Noll,* the emphasis should be on clarity, both as to evidence relied upon and the reason or reasons for the order. It is not improper to state alternative grounds for supporting the order, but those grounds should not be merged together and should be explained separately so that a reviewing court can understand what has been done.

Where the determination is whether a claimant is permanently and totally disabled, there are several scenarios which we will analyze separately.

1. The first situation is where the claimant is medically able to return to a former position of employment.

■ (a) If the Industrial Commission finds that a person is medically able to return to his or her former position of employment based upon some evidence upon which it specifically relies, the inquiry ends because any inability to work is not causally related to the allowed condition. See *State ex rel. Hartung v. Columbus* (1990), 53 Ohio St.3d 257, 560 N.E.2d 196; *State ex rel. Western Elec. Co. v. Coyer* (1990), 53 Ohio St.3d 129, 559 N.E.2d 738. In that instance, it is unnecessary to evaluate the non-medical (*Stephenson*) factors as they are irrelevant to the issue of causal relationship to the allowed condition. Parenthetically, it is submitted that the case of *State ex rel. Woods v. Indus. Comm.* (1990), 50 Ohio St.3d 227, 553 N.E.2d 665, should be limited to the facts of the case; it does not support the conclusion that, as a general rule, *Stephenson* factors should be evaluated when there is a finding that the claimant is medically able to return to his former position of employment.

■ (b) If there is some evidence upon which the commission specifically relies that a claimant is medically unable not only to return to his former position of employment but to perform any sustained remunerative employment, all as a result of the allowed condition, it is unnecessary that the commission look at any further factors, such as *Stephenson* factors, and an order allowing permanent total disability compensation should be entered. *State ex rel. Galion Mfg. Div., Dresser Industries, Inc. v. Haygood* (1991), 60 Ohio St.3d 38, 573 N.E.2d 60.

■ 2. The second situation is where there is medical inability resulting from allowed causes to return to the former position of employment, but there is the medical ability to perform other employment (generally "lighter" or less physical work).

■ In that event, the non-medical *Stephenson* factors must be reviewed to answer the query of whether the claimant is unfit to work at any sustained remunerative employment. These factors include the claimant's age, education, work record, psychological or psychiatric factors, and any other factors that may be important to its determination as to whether the claimant may return to the job market by using past employment skills or those skills which may be reasonably developed. See *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 170, 31 OBR 369, 372, 509 N.E.2d 946, 949. While the determination of permanent total disability, and whether or not the claimant can return to any other remunerative employment, is an ultimate finding within the province of the commission, it is necessary that these factors be considered and that there be some reasonable basis for concluding that the claimant is capable of sustained remunerative employment. Obviously the factors, coupled with the nature of the medical impairment, can weigh so heavily against the person being qualified for any sustained remunerative employment that an order disallowing permanent total disability could be an

abuse of discretion. Where possible, the Industrial Commission should state why the combination of the medical disability and the *Stephenson* factors do not add up to the inability to work at a substantially remunerative position. Some guidelines for making this determination are offered as follows:

(1) The issue is not whether a job is actually available, particularly within a specific geographical area, but whether the claimant is reasonably qualified for sustained remunerative employment. In exercising its discretion, the Industrial Commission can take into account the extreme scarcity of the type of employment for which claimant is hypothetically qualified. The fact that claimant may be required to move is not sufficient to justify a finding that the claimant is permanently and totally disabled.

(2) It would be helpful if physicians submitting reports to the Industrial Commission were instructed to identify the medical capacities of the claimant which would be helpful to the Industrial Commission in determining the type of employment, if any, that the claimant can perform. Conclusory statements of doctors or other experts are not especially helpful since the conclusions are to be drawn by the Industrial Commission.

(3) Vocational reports are helpful, although not binding, but the expert should address the primary consideration of whether the claimant is qualified for sustained remunerative employment of any reasonable nature rather than whether a job is actually available.

(4) The non-medical factors include those that may, in certain instances, be held to constitute causation for the person being unable to engage in substantially remunerative employment despite the medical disability from the allowed condition(s). For example, claimant may be disabled at age fifty-five from returning to the former position of employment but, at that time, be capable of obtaining sustained remunerative employment within the medically limiting capabilities that the claimant has, after considering all non-medical factors, including age. Ten or fifteen years may elapse with the physical condition remaining approximately the same. At that time, the age factor may be combined with the disability to disqualify claimant from any sustained remunerative employment. In that event, the Industrial Commission should have the discretion to find that the sole causal factor is the increase in age rather than the allowed disability.

Factors such as lack of education or training may prevent a claimant from obtaining a desk or clerical job which he or she is medically capable of performing. In that event, the Industrial Commission may consider not only past employment skills but those skills which may reasonably be developed. See *Stephenson.* The Industrial Commission may take into account the failure of the claimant to undergo rehabilitation or training that would permit the claimant's return to sustained remunerative employment.

■ In summary, in this case, as well as in other cases, the Industrial Commission should clearly and frankly state not only the evidence upon which it relies, but also the exact reason why permanent total disability is allowed or disallowed that will enable courts to review the order to determine whether the commission's discretion has been properly exercised. In that way, consistent guidelines can be developed, resulting in uniformity of decisions concerning permanent total disability. A body of law that places age and other non-medical factors in their proper perspective can be intelligently explored. If orders are vague, as is generally true now, the role of age and other pertinent non-medical factors in the determination of permanent total disability will remain largely undetermined and unaddressed, either by the commission, the courts, or the General Assembly.

■ In the case at hand, the Industrial Commission should apply these guidelines to render a clear order that is subject to review, if necessary, in mandamus.

The report and recommendation of the referee is hereby adopted. A writ of mandamus shall be issued requiring that the order denying Speelman's application for permanent total disability compensation be vacated and that the Industrial Commission issue a new order which complies with the decision of the Supreme Court of Ohio in *State ex rel. Noll, supra,* as further discussed herein.

*Writ granted.*

McCORMAC, BOWMAN and TYACK, JJ., concur.