DECISION
{¶ 1} In this original action, relator, Charles B. Yancey, seeks a writ of mandamus compelling respondent, the Industrial Commission of Ohio, to vacate its order denying relator's application for permanent total disability compensation and enter a new order that grants relator's application.
 {¶ 2} The matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision that includes findings of fact and conclusions of law and recommended that this court grant the requested writ of mandamus. (Attached as Appendix A.) No objection has been filed to the magistrate's decision.
 {¶ 3} Pursuant to Civ.R. 53(E)(4), the court conducted a full review of the magistrate's decision. The court finds that there is no error of law or other defect upon the face of the decision. Therefore, the court adopts the magistrate's decision. The requested writ of mandamus is granted. The Industrial Commission is ordered to vacate its previous order and to issue a new order adjudicating relator's application for permanent total disability compensation.
Writ of mandamus granted.
Bryant and Petree, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Charles B. Yancey, :
 Relator, :
v. : No. 04AP-1357
Columbus Maintenance Service Co., : (REGULAR CALENDAR)
Columbus Metro Area Community :
Action Org. and Industrial Commission :
of Ohio, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on June 30, 2005 Michael J. Muldoon, for relator.
Jim Petro, Attorney General, and Shawn M. Wollam, for respondent Industrial Commission of Ohio.
 In Mandamus {¶ 4} In this original action, relator, Charles B. Yancey, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 5} 1. Relator has two industrial claims. His April 14, 1972 injury is allowed for "lumbosacral and cervical strain; depressive disorder with anxiety," and is assigned claim number YC3658. His July 30, 1975 injury is allowed for "thoraco lumbar myositis," and is assigned claim number 75-41036.
 {¶ 6} 2. On April 22, 2004, relator filed an application for PTD compensation.
 {¶ 7} 3. Under the "Education" section of the application, relator indicated that the eighth grade was the highest grade of school he had completed and this occurred in the year 1953. He further indicated that he has not received a certificate for passing the General Educational Development ("GED") test. He has never attended a trade or vocational school and he has no special training.
 {¶ 8} The application form posed three questions to the applicant: (1) "Can you read?" (2) "Can you write?" and (3) "Can you do basic math?" Given the choice of "Yes," "No," and "Not well," relator selected the "Not well" response.
 {¶ 9} 4. On June 25, 2004, relator was examined at the commission's request by orthopedist Robert Turner, M.D. Dr. Turner issued a report, dated June 30, 2004, stating:
HISTORY:
Mr. Yancey is now a 72 year old gentleman injured in 1975. He was doing maintenance work and had to push a pop machine and noted pain in his back. He has been living with his pain for all of these years. His treatment has been conservative. He does take medication and it does help somewhat. He did keep working until 1995. He changed jobs and worked as a baker. He found that his pain was slowly and progressively preventing him from performing his job and he finally retired in 1995 due to an inability to keep up. He cannot tell me that the retirement has improved his pain. He complains of pain pretty much from his occiput to his lower back. It is improved by getting off of his feet although he tells me he is unable to sleep at night. He has extreme difficulty getting up from the supine position. The pain does go out into his shoulders. He describes his arms as going out intermittently.
PHYSICAL EXAMINATION:
On physical examination this is a gentleman who ambulates slowly. He has some increase in his thoracic kyphosis. He carries a cane I believe for balance. He does have increased thoracic kyphosis on exam. He has decreased lumbar lordosis. Cervical alignment if [sic] fairly normal. He will bend his neck and his low back only about 20 degrees forward, about 5 degrees backwards, and about 5 degrees side to side. He does not have good segmental motion in his lumbar area. He is limited to about 75 degrees abduction of both shoulders and this is actually his biggest complaint. He appears to have primary rotator cuff disease and this would not be related to his Workers' Compensation claim. He has no atrophy in his upper extremities. I am unable to obtain a biceps reflex on either side, triceps and brachial radialis reflexes are normal. His motor function exam is normal. His leg lengths were equal and his knee jerk and ankle jerks are 2+ and bilaterally equal. He has no atrophy in his lower extremities. His motor function exam was grossly normal. His straight leg raising test is negative.
DISCUSSION:
I believe that Mr. Yancey probably is unable to perform the duties of a baker or a maintenance man, though it would appear that this is more age related than injury related.
OPINION:
1. The claimant has reached MMI with regard to each specific allowed condition. The conditions for which I am evaluating him are thoracolumbar myositis, lumbosacral and cervical strain.
2. His percentage of permanent partial impairment is 15%. Based on the AMA Guides, 4th Edition, this would be a Type II DRE Category of the cervical, thoracic and lumbar areas. I am using Table 72, Table 73, and Table 74, and in the Combined Values Scale this comes to 15%.
3. The Physical Strength Rating Form has been completed.
 {¶ 10} 5. Dr. Turner also completed a Physical Strength Rating form dated June 25, 2004. On the form, Dr. Turner indicated by checkmark that "based solely on the allowed condition(s)" for which he examined, relator is capable of "sedentary work."
 {¶ 11} 6. On June 25, 2004, relator was examined at the commission's request by psychiatrist Donald L. Brown, M.D. Dr. Brown issued a report dated July 1, 2004, stating:
DISCUSSION:
* * * He was injured in 1972 and again in 1975 and treatment with respect to both of these injuries has been conservative. He maintained his primary employment as a baker at Wonder Bread until 1995 when he said he was disabled because he could not keep up with the demands of the job. Subsequently, he has since been much less active and somewhat isolated and as a result of this and his chronic pain has developed depression and he has been allowed for depressive disorder with anxiety. He has been in treatment with Dr. Showalter and also utilizing medication though he could not identify either his psychotropic medication or the medication he takes for pain. He described himself as rather isolated at times and with his pain and irregular schedule that he some times gets confused and disoriented. He seems to be showing some signs of cognitive slippage which is not related to his industrial injuries or his allowances. I feel with respect to his depressive order with anxiety that a significant stressor for him is the fact that he realizes that he is having some cognitive slippage and he is not as competent and capable as he was in the past. I do not feel that he has a degree of depression or anxiety that would prevent him from returning to his former position of employment or other forms of sustained remunerative employment. I rather feel that these conditions would be greatly helped should he on a physical basis be able to work again as this would provide him with some outside stimulation and structure. I believe that his previously allowed depressive disorder with anxiety would cause him a mild impairment in activities of daily living, socialization, concentration, persistence in pace with moderate impairment and adaptation.
OPINION:
In my opinion, Mr. Yancey has reached MMI with respect to his previously allowed depressive disorder with anxiety and it can be considered permanent. Utilizing the Fourth Edition of the AMA Guides for Determination of Permanent Impairment, I would rate him as having a Class III level of impairment. This is a moderate level of impairment. Referencing to percentages from the Second Edition and the Fourth Edition, I would rate his impairment at 30-35%.
 {¶ 12} 7. Dr. Brown completed an Occupational Activity Assessment form dated June 25, 2004. The form asks the examining physician to answer a two-part query:
Based on the impairment resulting from the allowed/alleged psychiatric/psychological condition(s) only, can this injured worker meet the basic mental/behavioral demands required:
To return to any former position of employment?
To perform any sustained remunerative employment? Dr. Brown responded in the affirmative to both queries.
 {¶ 13} 8. In support of his PTD application, relator submitted a vocational report from Molly S. Williams dated August 8, 2004, stating:
* * * [A]n individual unable to perform his customary past relevant work as a Baker; an individual of advanced age (age fifty-five or over); an individual with a limited education (seventh grade through the eleventh grade) completed in the remote past (1953); an individual with no transferable skill(s); and an individual not expected to make a vocational adjustment to other work based upon the allowed physical impairments as assessed by The Industrial Commission's Specialist, Robert Turner, M.D., it is obvious that the claimant is permanently and totally disabled.
 {¶ 14} 9. Apparently, the commission did not request an employability assessment report from a vocational expert.
 {¶ 15} 10. Following a September 15, 2004 hearing, a staff hearing officer ("SHO") issued an order denying the PTD application. The SHO's order states:
The Staff Hearing Officer relies upon the persuasive reports dated 06/30/2004 and 06/25/2004 and 07/01/2004 that were prepared by Industrial Commission Orthopedist Dr. Robert Turner. Dr. Robert Turner supports the conclusion that the allowed physical conditions do not prevent the claimant from engaging in at least certain types of sustained remunerative employment.
The Staff Hearing Officer relies upon the persuasive reports dated 06/25/2004 and 07/01/2004 and prepared by Industrial Commission Psychiatrist Dr. Donald Brown. He supports the conclusion that the allowed psychological conditions do not prevent the claimant from engaging in at least certain kinds of employment, including the claimant's former positions of employment.
The claimant was originally injured on 04/14/1972 while working as a school bus/van driver when he was involved in a motor vehicle accident. The claim was originally allowed for a lumbosacral and cervical strain and additionally allowed for depressive disorder with anxiety in 2002. The claimant missed work on two separate occasions due to this 1972 injury. Both periods of disability were for periods of less than six (6) months of lost time.
On 07/30/1975, the claimant was pushing a pop machine and felt something in his back snap. The claim was allowed for thoracic lumbar myositis. The claimant was employed at the time as a maintenance worker for Columbus Maintenance and Service Company. The claimant had also worked at Wonder Bread at the time as a baker but the injury occurred while he was working as a maintenance worker. The Staff Hearing Officer notes that no temporary total disability compensation was ever paid in the 1975 claim.
The claimant continued to work after both injuries until 1995 when he retired from Wonder Bread. The claimant receives $1,000.00 a month in retirement income from Wonder Bread and $1,000.00 a month in Social Security retirement income.
* * *
Dr. Robert Turner examined the claimant on 06/25/2004 on behalf of the Industrial Commission. Dr. Turner found a normal motor exam and negative straight leg raise test and found the claimant's biggest complaint was his reduced shoulder motion which appeared related to rotator cuff disease. Dr. Turner opined the claimant is capable of sedentary work and has a 15% permanent impairment due to the allowed physical conditions.
Dr. Brown examined the claimant on the depressive disorder with anxiety. He found the clamant stopped working in 1995 because he could not keep up with the work demands of the job and that he has been much less active since. The claimant is isolated and as a result of the isolation and pain has developed depression. Dr. Brown also notes the claimant's loss of cognitive abilities is not related to the injuries or the allowances. Dr. Brown finds the loss of cognitive abilities is a significant stressor for the claimant. Dr. Brown opined that the allowed psychological condition would not preclude the claimant from returning to his former position of employment or from returning to any sustained remunerative employment. Dr. Brown found the allowed psychological condition results in a 30%-35% permanent impairment.
The claimant testified at hearing that he is currently approximately 72 years of age. A mere increase in age, rather than the allowed disability, may not be the sole causative factor to support an award.State, ex rel. Speelman v. Industrial Commission (1992), 73 O. App. 3d 757.
The claimant indicated at hearing that he has completed approximately the seventh grade of education. The claimant did indicate that he failed three (3) different grades and left school before completing the eighth grade due to feeling shame from his past grade failures. However, the claimant did indicate at hearing that he is able to perform basic reading, writing, and math. The claimant did testify that he does read the newspaper and does write checks. The claimant does drive a car.
The claimant's prior work history was identified as including the following: dump truck driver, janitor; maintenance worker; school bus driver; valet van driver; desk clerk; baker and maintenance supervisor.
The claimant's past work experiences is considered medium work to heavy work according to the claimant's IC-2 application filed 04/22/2004. The claimant indicated on the IC-2 application and at hearing that the most
he was required to lift was 50 pounds and some past positions such as the baker and janitorial positions required lifting 50 pounds frequently. The Staff Hearing Officer finds the desk clerk position and school bus driver, and valet van driver would be less strenous [sic]. The claimant testified that he did janitorial work at the Holiday Inn but would attimes work the front desk and would work as a valet van driver also. The claimant would drive a shutter [sic] bus to and from the airport and the Holiday Inn, according to the claimant's testimony at hearing.
The claimant testified that he stopped working in 1995 from Wonder Bread were [sic] he has worked as a maintenance worker. The claimant indicated that he had fallen down a flight of stairs and had re-injured his back but had not filed a claim against Wonder Bread. The claimant retired from Wonder Bread in 1995 and has not worked since 1995.
The claimant is not eligible for vocational retraining due to his advanced age. However, the claimant testified that he is able to drive a vehicle, attends church, and occasionally shops with his daughter.
The Staff Hearing Officer finds the claimant's current inability to work is not related to the allowed physical and psychological conditions. The physical findings and impairments due to the allowed physical conditions of these claims are found to be minimal. The allowed psychological condition would not preclude the claimant from working even his former position of employments.
The Staff Hearing Officer finds the claimant's inability to work is likely related to the natural aging process. The Staff Hearing Officer relies on the 06/25/2004 exam findings of Dr. Turner and Dr. Brown. Dr. Turner opines the claimant's biggest complaint is his difficulty with abduction of both shoulders which appears to be due to rotator cuff disease. The Staff Hearing Officer also relies on Dr. Robert Turner's 06/30/2004 opinion that "Mr. Yancy probably is unable to perform the duties of a baker or maintenance man though it would appear that this is more age related than injury related." Dr. Donald Brown indicates:
"He seems to be showing some signs of cognitive slippage which is not related to his industrial injuries or his allowances. I feel with respect to his depressive order with anxiety that a significant stressor for him is the fact that he realizes that he is having some cognitive slippage and he is not as competent and capable as he was in the past. I do not feel that he has a degree of depression or anxiety that would prevent him from returning to his former position of employment or other forms of sustained remunerative employment. I rather feel that these conditions would be greatly helped should he on a physical basis be able to work again as this would provide him with some outside stimulation and structure. I believe that his previously allowed depressive disorder with anxiety would cause him a mild impairment in activities of daily living, socialization, concentration, persistence in pace with moderate impairment and adaptation."
The Staff Hearing Officer also notes that the claimant testified at hearing that he feels very frustrated by his physical limitations and his inability to perform activities that he once he [sic] was able to perform. The Staff Hearing Officer finds however that the claimant's physical limitations are likely due to the non-allowed physical problems (associated with his arms, knees, shoulders, and legs) per claimant's testimony at hearing and are not from the industrial injuries. The Staff Hearing Officer therefore denies the request for permanent total disability compensation. The Staff Hearing Officer relies on the case ofState, ex el. De Zarn v. Industrial Commission (1996), 74 Ohio St. 3d 461, wherein the court held that the Commission must have discretion to attribute a claimant's inability to work to age alone and deny compensation where evidence supports such a conclusion.
Based on a careful consideration of the above, as well as all of the evidence in file and at hearing, the Staff Hearing Officer concludes that the claimant is capable of performing sustained remunerative employment consistent with the job titles identified by the Vocational Expert as being current employment options. Therefore, the claimant is not permanently totally disabled.
(Emphasis sic.)
 {¶ 16} 11. On December 22, 2004, relator, Charles B. Yancey, filed this mandamus action.
Conclusions of Law:
 {¶ 17} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 18} Ohio Adm. Code 4121-3-34(D) sets forth the commission's guidelines for adjudication of PTD applications.
 {¶ 19} Ohio Adm. Code 4121-3-34(D)(1)(g) states:
If, after hearing, the adjudicator determines that there is appropriate evidence which indicates the injured worker's age is the sole cause or primary obstacle which serves as a significant impediment to reemployment, permanent total disability compensation shall be denied. However, a decision based upon age must always involve a case-by-case analysis. The injured worker's age should also be considered in conjunction with other relevant and appropriate aspects of the injured worker's nonmedical profile.
 {¶ 20} Ohio Adm. Code 4121-3-34(D)(2)(b) states:
If, after hearing, the adjudicator finds that the injured worker, based on the medical impairment resulting from the allowed conditions is unable to return to the former position of employment but may be able to engage in sustained remunerative employment, the non-medical factors shall be considered by the adjudicator.
The non-medical factors that are to be reviewed are the injured worker's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record that might be important to the determination as to whether the injured worker may return to the job market by using past employment skills or those skills which may be reasonably developed. * * *
 {¶ 21} The commission's explanation for its denial of the PTD application compels this magistrate to focus on the above two provisions of the Ohio Administrative Code.
 {¶ 22} Analysis begins with the observation that Ohio Adm. Code4121-3-34(D)(1)(g), the rule regarding advanced age as the sole cause of disability, was derived from this court's decision in State ex rel.Speelman v. Indus. Comm. (1992), 73 Ohio App.3d 757, 763, wherein this court pronounced:
The non-medical factors include those that may, in certain instances, be held to constitute causation for the person being unable to engage in substantially remunerative employment despite the medical disability from the allowed condition(s). For example, claimant may be disabled at age fifty-five from returning to the former position of employment but, at that time, be capable of obtaining sustained remunerative employment within the medically limiting capabilities that the claimant has, after considering all non-medical factors, including age. Ten or fifteen years may elapse with the physical condition remaining approximately the same. At that time, the age factor may be combined with the disability to disqualify claimant from any sustained remunerative employment. In that event, the Industrial Commission should have the discretion to find that the sole causal factor is the increase in age rather than the allowed disability.
 {¶ 23} In State ex rel. DeZarn v. Indus. Comm. (1996),74 Ohio St.3d 461, the Supreme Court of Ohio approved of and applied this court's pronouncement in Speelman to uphold the commission's denial of a PTD application in a mandamus action.
 {¶ 24} Howard S. DeZarn had industrially injured his back and knees in 1981. In 1988, Mr. DeZarn applied for PTD compensation. In 1991, at the commission's request, Mr. DeZarn was examined by Dr. Woolf.
 {¶ 25} The DeZarn court describes Dr. Woolf's report:
* * * Dr. Woolf ultimately assessed a twenty-seven percent permanent partial impairment attributable to claimant's allowed conditions. Dr. Woolf concluded, "This gentleman, somewhere in his 60's, age uncertain, was not entirely cooperative in this examination, but I think that we were able to secure the correct measurements and things to arrive at a determination. The true limiting factor on his ability to work, in my opinion, is time and the natural progression of aging. I think his industrial mishaps have long ago healed and what he has is what he has. * * *"
Id. at 462.
 {¶ 26} Citing Dr. Woolf's report, the commission denied Mr. DeZarn's PTD application. The commission's order explained:
"The claimant is 71 years old and has a work history as a construction worker, logger and heavy equipment operator. Commission Specialist, Dr. Woolf, has indicated that the claimant has a 27% permanent partial impairment from the allowed conditions in the claim. He further indicated that the true limitation [sic] factor on his ability to work was time and the natural progression of aging. Given the relatively small percentage of impairment assigned by Dr. Woolf, the claimant's age is the primary obstacle in his returning to work. It is found that the disability resulting from the allowed conditions of the claim do[es] not permanently preclude a return to any form of sustained remunerative employment."
Id. at 462-463.
 {¶ 27} After quoting this court's pronouncement in Speelman, theDeZarn court states:
Speelman makes an outstanding point. Permanent total disability compensation was never intended to compensate a claimant for simply growing old. Therefore, the commission must indeed have the discretion to attribute a claimant's inability to work to age alone and deny compensation where the evidence supports such a conclusion. In this case, Dr. Woolf's report is "some evidence" supporting such a finding. Dr. Woolf specifically attributed claimant's inability to work to "time and the natural progression of aging." The commission's denial of permanent total disability compensation was not, therefore, an abuse of discretion.
Id. at 463-464.
 {¶ 28} In the magistrate's view, it is important to note that theDeZarn court held that Dr. Woolf's report is "some evidence" supporting the commission's denial of the PTD application. It is also important to note that Dr. Woolf did not indicate in his report (as reported in the court's opinion) that the industrial injury prohibited Mr. DeZarn from performing any type of employment or that the industrial injury prevented his return to his former position of employment. Although Dr. Woolf did opine that the industrial injury produced a 27 percent permanent partial impairment, Dr. Woolf implicitly indicated that the industrial injury had no significant impact on Mr. DeZarn's ability to work. Thus, Dr. Woolf believed that any limitation on Mr. DeZarn's ability to work was a result of the "natural progression of aging."
 {¶ 29} It is equally important to observe what the DeZarn court did not say. The DeZarn court did not hold that the commission has the discretion to deny a PTD application simply because the claimant has age-related medical conditions that prevent him or her from working. To interpret DeZarn in such manner would in effect overrule settled law first set forth in State ex rel. Waddle v. Indus. Comm. (1993),67 Ohio St.3d 452.
 {¶ 30} In Waddle, it was held that nonallowed medical conditions cannot be used to advance or defeat a claim for PTD compensation. This principle applies as well to nonallowed medical conditions resulting from the aging process.
 {¶ 31} In the instant case, the commission relied upon the medical reports of Drs. Turner and Brown.
 {¶ 32} Dr. Turner indicates in his report that relator suffers from rotator cuff disease which is not related to the industrial claim. He opines that relator "probably is unable to perform the duties of a baker or a maintenance man, though it would appear that this is more age related than injury related."
 {¶ 33} Dr. Brown indicates in his report that relator suffers from "cognitive slippage which is not related to his industrial injuries or his allowances."
 {¶ 34} Clearly, under Waddle, the commission cannot use relator's "rotator cuff disease," "cognitive slippage" or any other nonallowed medical condition — whether age related or not — to defeat the PTD application.
 {¶ 35} The commission's reliance upon Dr. Turner's report required it to conclude that, based solely on the allowed conditions of the claim, relator is now restricted to sedentary work. That is to say, the industrial injury is indeed work-prohibitive as to all nonsedentary employment based upon the commission's reliance upon Dr. Turner's report.
 {¶ 36} The commission, through its SHO, characterizes relator's industrially-related work restrictions as "minimal" and then proceeds to rely upon DeZarn to explain its denial of the PTD application. In the last paragraph of the commission's order, seemingly disconnected from the rest of the order, the commission states:
Based on a careful consideration of the above, as well as all of the evidence in file and at hearing, the Staff Hearing Officer concludes that the claimant is capable of performing sustained remunerative employment consistent with the job titles identified by the Vocational Expert as being current employment options. Therefore, the claimant is not permanently totally disabled.
 {¶ 37} One of the problems with the last paragraph of the commission's order is that there is no vocational report of record that identifies job titles as current employment options.
 {¶ 38} Regardless of whether it can be said that relator's industrial work restrictions are "minimal," when the commission relies upon Dr. Turner's opinion that the industrial injury limits relator to sedentary employment, it cannot forgo an analysis of the nonmedical factors under Ohio Adm. Code 4121-3-34(D)(2)(b) and a determination of whether the nonmedical factors so impact the industrial injury as to prohibit all sustained remunerative employment.
 {¶ 39} Clearly, DeZarn is inapplicable to the instant case. Dr. Turner's report in the instant case is not some evidence, as was the case with Dr. Woolf's report in DeZarn, that the industrial injury is not significantly work-prohibitive.
 {¶ 40} Here, the commission misapplied DeZarn in a way that violatesWaddle. The commission's order suggests that, because relator has significant physical and mental limitations due to nonallowed conditions, it was free to attribute all of relator's disabilities to his age alone. This misconstrues DeZarn and violates Waddle.
 {¶ 41} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying relator's PTD application, and, in a manner consistent with this magistrate's decision, enter a new order that adjudicates the PTD application.