{¶ 1} In this original action, relator, Pearlena Holston, seeks a writ of mandamus compelling respondent, the Industrial Commission of Ohio ("commission"), to vacate its order, which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to redetermine her application after a thorough and adequate analysis on the nonmedical disability factors.
 {¶ 2} The matter was referred to a magistrate of this court pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision that includes findings of fact and conclusions of law and recommended that this court deny the requested writ of mandamus. (Attached as Appendix A.) Relator filed timely objections to the decision of the magistrate. The objections are not addressed to the magistrate's factual findings, but only to the magistrate's conclusions of law.
 {¶ 3} Relator was the owner/manager of Holston's Group Home, the employer herein. During her employment, relator suffered two work-related injuries. Her 1993 injury occurred as a result of lifting a box and was allowed for "lumbar sprain." Relator was able to return to work. Her 1997 injury occurred when she fell and hurt her knee and aggravated her back condition. This claim was allowed for "contusion of knee, left; sprain lumbar region; sprain of ankle, Nos, left; aggravation of pre-existing lumbar disc disease and spondylolisthesis." Relator was able to return to work after this injury as well.
 {¶ 4} Relator continued to work until December 5, 2002, when she was 70 years old. On April 5, 2005, relator applied for PTD compensation based upon her injuries sustained in 1993 and 1997. Relator's application stated that she was 72 years old at the time of her application and had retired from the workforce at age 70. Relator stated that she had finished her high school education and was licensed as a licensed practical nurse and that she held both cosmetology and real estate licenses. The application indicated that relator could read, write and perform basic mathematics.
 {¶ 5} In support of her application for PTD compensation, relator submitted the December 3, 2004 report of Dr. Dee Ann Bialecki-Haase. The doctor's report noted that relator has chronic low back pain and stiffness, with severe pain if she attempts to lift objects with her back. The doctor further noted that relator's knee injury was not a major problem but that relator should be restricted from squatting and kneeling. Dr. Bialecki-Haase reported that relator had the following work restrictions: cannot stand or walk for over 15 minutes at a time; unable to do any lifting with her back; occasionally lift a maximum of ten pounds from waist level; avoid stooping, squatting, kneeling, and climbing; and avoid climbing stairs. Dr. Bialecki-Haase was of the opinion that relator could not return to her job as owner/manager of the group home and that she was permanently and totally disabled.
 {¶ 6} Dr. Harvey A. Popovich examined relator. In his May 18, 2005 report, Dr. Popovich provided his findings upon physical examination and then opined that relator had reached maximum medical improvement ("MMI"). Dr. Popovich assessed a five percent whole person impairment for all of relator's allowed conditions. Dr. Popovich was of the opinion that relator was capable of performing sedentary work as defined in the Ohio Administrative Code.
 {¶ 7} A staff hearing officer ("SHO") heard relator's application for PTD compensation on August 24, 2005. The application was denied. The SHO relied upon the medical report of Dr. Popovich and concluded that relator was capable of performing work at a sedentary level. The SHO considered the nonmedical disability factors, including relator's age, her last work and that relator quit working on December 5, 2002 because she could not do all of her activities at her group nursing home. Significantly, the SHO found that there was no contemporary medical evidence to indicate that relator was no longer able to perform her work with the group home. The SHO also noted that relator owned the group home which was her own business and that relator was trained as an LPN, a cosmetologist and owned and operated her own beauty salon and obtained a real estate license in 1979. The SHO found that relator has excellent vocational factors, had demonstrated the ability to adapt and train for new work environments and learn new skills and that the only barrier to re-employment was her age. The magistrate recommended that a writ of mandamus be denied.
 {¶ 8} Relator objects to the magistrate's reliance upon State ex rel.DeZarn v. Indus. Comm. (1996), 74 Ohio St.3d 461, as authority for the proposition that the commission has discretion to deny an application for PTD compensation if the claimant's increased age is found to be the causal factor for inability to return to the workforce. Relator believes that both the commission and the magistrate misread DeZarn. Relator believes that the commission may only consider medical evidence which opines that increased age is the cause of inability to work. We disagree and find that under DeZarn, the commission has the discretion to consider nonmedical evidence that age is the causation for a claimant's failure to return to work.
 {¶ 9} It is true that in DeZarn, the evidence that the natural progression of age was the sole reason the claimant could not work, was contained in a medical report. However, DeZarn did not limit age causative evidence to medical opinion. PTD compensation was never intended to compensate a claimant for simply growing old. State ex rel.Moss v. Indus. Comm. (1996), 75 Ohio St.3d 414, 417. See State ex rel.Speelman v. Indus. Comm. (1992), 73 Ohio App.3d 757. "[T]he commission must indeed have the discretion to attribute a claimant's inability to work to age alone and deny compensation where the evidence supports such conclusion." DeZarn, at 463-464. DeZarn does not hold that only medical evidence of age-caused inability to work may be considered.
 {¶ 10} Relator also objects to the magistrate's conclusion that age was a vocational factor adversely affecting relator's ability to engage in remunerative employment. Again, we must disagree. The SHO found that relator was physically capable of performing work. This is supported by the medical report of Dr. Popovich. In addition, the SHO noted that relator had a number of skills that would permit her to be gainfully employed. Relator is educated and has held licenses as a charge nurse and relator has demonstrated the ability to adapt to new work environments. The SHO went on to find that the nonmedical factors of educational background and prior employment history are not barriers to re-employment and that the only barrier to re-employment appeared to be relator's age. In short, there was no evidence that relator could not be re-employed, other than her age. Since growing old is not compensable under the workers' compensation laws, the magistrate did not err in her conclusions in this case.
 {¶ 11} There is some medical evidence in this case to support the commission's finding that relator's work-related injuries do not prevent her from re-employment. Her nonmedical factors such as education and ability to retrain do not prevent her from re-employment. Only her age remains as the cause for lack of re-employment. Age alone is not a basis for being awarded PTD benefits.
 {¶ 12} Pursuant to Civ. R. 53(E)(4), this court conducted a full review of the magistrate's decision. This court finds that there is no error of law or other defect upon the face of the magistrate's decision. The objections are overruled and the magistrate's decision is adopted. The requested writ of mandamus is denied.
Objections overruled; writ of mandamus denied
 KLATT, P.J., and BRYANT, J., concur. (APPENDIX A) MAGISTRATE'S DECISION IN MANDAMUS {¶ 13} Relator, Pearlena Holston, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied her application for permanent total disability ("PTD") compensation, and ordering the commission to redetermine her application for PTD compensation after a thorough and adequate analysis of the non-medical disability factors.
Findings of Fact:
 {¶ 14} 1. Relator was the owner/manager of Holston's Group Home, the employer herein. During the course of her employment, relator suffered two work-related injuries and her claims have been allowed as follows:
 CLAIM NUMBER 93-43133: LUMBAR SPRAIN.
 CLAIM NUMBER 97-603867: CONTUSION OF KNEE, LEFT; SPRAIN LUMBAR REGION; SPRAIN OF ANKLE, NOS, LEFT; AGGRAVATION OF PRE-EXISTING LUMBAR DISC DISEASE AND SPONDYLOLISTHESIS.
 {¶ 15} 2. Relator's 1993 injury occurred as a result of lifting a box. Relator was able to return to work after this injury.
 {¶ 16} 3. In February, 1997, relator suffered her second injury when she fell, hurting her knee and aggravating her back condition. Relator was able to return to work after this injury as well.
 {¶ 17} 4. Relator continued to work until December 5, 2002. At that time, she was 70 years old.
 {¶ 18} 5. On April 5, 2005, relator filed an application for PTD compensation based upon the injuries she sustained in 1993 and 1997. According to her application, relator was 72 years old at the time she filed her application for PTD compensation and had retired from the work force at the age of 70. Relator indicated that she had finished high school, that she was licensed as an L.P.N., and that she had her cosmetology license as well as her real estate license. Relator also indicated that she could read, write, and perform basic math.
 {¶ 19} 6. In support of her application for PTD compensation, relator submitted the December 3, 2004 report of Dr. Dee Ann Bialecki-Haase. In her report, Dr. Bialecki-Haase noted that relator has chronic low back pain and stiffness, with severe pain if she tries to lift anything with her back. She noted further that relator's knee was not a major problem but she is restricted from any squatting and kneeling. After providing her findings upon physical examination, Dr. Bialecki-Haase noted that relator had the following restrictions: cannot stand or walk for over 15 minutes at a time; unable to do any lifting with her back; occasionally lift a maximum of ten pounds from waist level; avoid stooping, squatting, kneeling, and climbing; and avoid climbing stairs. Dr. Bialecki-Haase opined that relator could not return to her job as owner/manager of the group home and that she was permanently and totally disabled.
 {¶ 20} 7. Relator was also examined by Dr. Harvey A. Popovich, who issued a report dated May 18, 2005. After providing his findings upon physical examination, Dr. Popovich opined that relator had reached maximum medical improvement, assessed a five percent whole person impairment for all of her allowed conditions, and opined that relator was capable of performing sedentary work as such is defined in the Ohio Administrative Code.
 {¶ 21} 8. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on August 24, 2005, and resulted in an order denying the application. The SHO relied upon the medical report of Dr. Popovich and concluded that relator was capable of performing work at a sedentary strength level. With regards to the non-medical disability factors, the SHO noted as follows:
 This Staff Hearing Officer finds that the injured worker is a 72 year old woman whose date of birth is 09/08/1932. The injured worker last worked on December 5, 2002. The injured worker testified, at hearing, that she quit work at that time, because she could no longer do all of her activities involving the Group Home. She was relying on and hiring more people to do the work rather than herself. However, this Staff Hearing Officer finds that the injured worker did not receive any Temporary Total Disability benefits after that time, and there is no contemporaneous medical evidence which indicates that she was no longer able to perform her work with the Group Home. This Staff Hearing Officer also notes that the injured worker is also the employer herein, as this was her own business. This Staff Hearing Officer finally also notes that the injured worker was 70 at the time that she left the workforce in December of 2002, which in many cases is a retirement age. The injured worker is a high school graduate. In addition, she has additional training as a Licensed Practical Nurse, she also went to Cosmetology School and owned and operated her own beauty salon, from 1965 through 1981. In addition, the injured worker obtained her Real Estate license in 1979. The injured worker is a well educated woman and is able to read, write and perform basic math. The injured worker has owned and operated two businesses throughout the course of her employment history. The injured worker has also worked as a charge nurse and as a relator. * * * Since the injured worker is physically capable of performing work, at least a sedentary level, the vocational factors must then be considered. This Staff Hearing Officer finds that the injured worker has excellent vocational factors. She is a high school graduate and subsequently obtained degrees or certificates in Real Estate, Cosmetology, and Licensed Practical Nursing. The injured worker has owned and operated her own businesses twice during the course of her employment career. The injured worker has demonstrated an ability to adapt to new work environments and to train and learn new skills. The injured worker's educational background and prior employment history are not barriers to re-employment. Therefore, the only barrier to re-employer [sic] is the injured worker's age. This Staff Hearing Officer finds that, if the only negative vocational factor is the injured worker's age, pursuant to the findings in DeZarn and Moss. Permanent and Total Disability Compensation cannot be granted on the basis of age alone. That being the case, this Staff Hearing Officer finds that the injured worker is not permanently and totally disabled, nor precluded from performed [sic] sustained remunerative work activity. Therefore, the IC-2 Application, filed on 04/05/2005, is hereby DENIED.
 {¶ 22} 9. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 23} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 24} The relevant inquiry in a determination of PTD is claimant's ability to do any sustained remunerative employment. State ex rel.Domjancic v. Indus. Comm. (1994), 69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus.Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 25} In this mandamus action, relator contends that the commission's analysis of the nonmedical vocational factors was inadequate. Relator argues that the commission applied State ex rel. Wilson v. Indus.Comm. (1997), 80 Ohio St.3d 250, State ex rel. DeZarn v. Indus.Comm. (1996), 74 Ohio St.3d 461, State ex rel. Moss v. Indus. Comm.
(1996), 75 Ohio St.3d 414, without conducting the analysis required if age is to be considered. Relator then goes through the facts of those three cases and compares them to the facts of relator's case and indicates that the propositions of law for which those cases stand, individually, require the commission to reach a different result in her case. Thereafter, relator cites two cases from this court which relator contends bear striking similarities to her case. Based upon this court's decisions in State ex rel. Yancey v. Columbus Maintenance Serv.Co., 04AP-1357, 2005-Ohio-5325, and State ex rel. Allied Chem. Corp. v.Indus. Comm., 02AP-756, 2003-Ohio-3119, relator contends that this court should grant a writ of mandamus ordering the commission to reconsider her age and the nonmedical disability factors in determining whether or not she is entitled to an award of PTD compensation. For the reasons that follow, this magistrate disagrees.
 {¶ 26} Considering relator's second argument first, although relator contends that the Yancey and Allied Chem. cases bear striking similarities to her case, this magistrate disagrees. As stated previously, in the present case, relator sustained two work-related injuries, one in 1993 and the other in 1997. Relator was able to return to work after both of those injuries. Relator retired from the workforce at age 70, and filed an application for PTD compensation when she was 72. Relator was a high school graduate, had additional training in cosmetology, real estate, and was an L.P.N. Relator also indicated that she was able to read, write, and perform basic math. With regard to her former employment, relator had owned and operated her own salon, had been employed as an L.P.N., and was an owner-operator of a care facility. The commission relied upon medical reports in determining that relator was capable of performing sedentary work. In discussing the nonmedical disability factors, the commission noted that relator had excellent vocational factors, and noted the fact that she was a high school graduate, that she had extra training, that she had owned and operated two businesses, and that she had the ability to adapt to new situations.
 {¶ 27} By comparison, the claimant in Yancey sustained two work-related injuries, one in 1972, and one in 1975, and the claimant returned to work after both injuries. The claimant in Yancey had an eighth grade education, did not obtain a GED, and had no other specialized training. On his PTD application, the claimant indicated that he could read, but that he could not write and that he did not perform math well. The claimant applied for PTD compensation at age 72, and his former work experience was as a maintenance worker and a baker. The commission relied upon a medical report and concluded the claimant could perform sedentary work. The commission did not provide any analysis of a nonmedical factor at all.
 {¶ 28} In Yancey, this court granted a writ of mandamus for several reasons. First, this court found that the commission had misinterpreted the report of Dr. Turner, who had indicated that the claimant's allowed conditions were work prohibitive to the extent that they limited the claimant to sedentary work. Further, this court noted that the commission indicated that the claimant could perform jobs consistent with those titles identified by a vocational expert; however, there was no vocational report in the record that identified any jobs as current employment options for the claimant. Further, this court concluded thatDeZarn was inapplicable because Dr. Turner's report did not constitute some evidence that the industrial injury was not significantly work prohibitive.
 {¶ 29} In the present case, Dr. Popovich has limited the relator to sedentary work, and as such, she cannot go back to performing the job she performed earlier. However, the commission found that relator's significantly greater education and work history could be utilized in obtaining sedentary work. As such, upon closer examination, this case is not similar to the Yancey case and this court's decision inYancey does not compel this court to issue a writ of mandamus in the present case.
 {¶ 30} Further, the magistrate finds the situation in AlliedChem. likewise does not compel a writ of mandamus in the present case. The claimant in Allied Chem. had sustained a work-related injury in 1962, and thereafter, was able to return to work. The claimant had an eighth grade education and indicated that he could read, write, and perform basic math. The claimant continued to work until he was 62 years old and, thereafter, filed four applications for PTD compensation, the first being filed in 1986. At the time that he filed his fourth application, June 4, 2001, he was 84 years old. The commission relied upon medical reports that indicated that claimant was capable of performing sedentary work. The commission found claimant's testimony that he had retired at age 62 due to constant back pain, which had been caused by the work-related injury, to be persuasive. The SHO also found that the claimant lacked any transferable skills from his previous work history which would enable him to engage in sedentary employment. Specifically, when considering the medical evidence in the record, the commission concluded that the claimant was capable of performing something less than true sedentary employment. The commission ultimately granted the claimant's application for PTD compensation.
 {¶ 31} The employer filed a mandamus action in this court and argued, in part, that the only factor keeping the claimant from working was the fact that he had aged since he had filed his earlier applications for PTD compensation. The employer also argued that the claimant had failed to pursue rehabilitation or retraining since 1978, when he had retired. This court specifically noted that, although the commission had previously denied the claimant's application for PTD compensation based upon the medical report of Dr. Turner, who had opined that the claimant's restrictions were age related rather than injury related, the commission relied upon new medical evidence when it granted the PTD application in 2001. Specifically, the commission relied upon the report of Dr. Hoback, who had opined that the industrial injury alone prohibited the claimant from all sustained remunerative employment. This court found that the employer's contention that the commission awarded the claimant PTD compensation for simply growing old lacked merit.
 {¶ 32} Again, this magistrate finds the Allied Chem. case differs significantly from the present case and does not compel this court to issue a writ of mandamus.
 {¶ 33} In the present case, relator worked until she was 70 years old. Two years later, relator filed her application for PTD compensation. The commission relied upon medical evidence that the relator was capable of performing sedentary work. Thereafter, the commission looked at the relator's education and work experience, and found those to be excellent vocational factors which would enable the relator to become employed again. The commission then noted that the only negative factor regarding relator's potential to become reemployed was her age. Relator's restrictions would allow her to perform sedentary work and the commission found that her education, special training and varied work history would enable her to work. As such, Allied Chem. does not compel this court to issue a writ of mandamus.
 {¶ 34} Thereafter, the commission cited three cases (DeZarn,Wilson, and Moss) which are frequently cited for the proposition that there is not an age, ever, at which reemployment is held to be a virtual impossibility as a matter of law. Relator asserts that the facts of those three cases must be thoroughly examined by the commission if the commission is going to cite them in an order. This magistrate does not agree with relator that the commission needs to scrutinize the specific facts of each of those cases noted by the commission.
 {¶ 35} These three cases are routinely cited by the commission, this court and by the Supreme Court of Ohio for the proposition that there is no age at which reemployment is held to be a virtual impossibility as a mater of law. Further, the magistrate notes that these cases and the other cases relator cites do not bear striking similarities to her case and do not compel the granting of a writ of mandamus. In the present case, the commission identified the medical evidence upon which it relied and noted that relator had excellent vocational factors which would enable her to seek reemployment. Although counsel for relator argued at hearing that, at age 72, relator no longer had the ability to learn new tasks, this magistrate does not believe that the commission was required to reach that conclusion. Furthermore, although relator's prior jobs were not sedentary when considered in their totality, there were many aspects of those jobs which would have been sedentary. For example, relator operated her own business on more than one occasion. Both the commission and this court can take judicial notice of the fact that certain aspects of operating one's own business are sedentary. Further, the commission is considered the expert of the vocational factors, and the commission was not required to obtain a vocational report and was not required to cite actual jobs which they believed relator was capable of performing — that has never been a requirement when denying an application for PTD compensation.
 {¶ 36} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated the commission abused its discretion in denying her application for PTD compensation, and this court should deny relator's request for writ of mandamus.