DECISION
{¶ 1} In this original action, relator, James G. Guy, seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's application for permanent total disability ("PTD") compensation and enter a new order granting his application.
 {¶ 2} Relator's claim stems from five industrial injuries he suffered during the course of his employment with Tartan Textile Services, Inc. ("Tartan Textile"). Claim No. 01-304336 was allowed for "lumbosacral sprain/strain; sacroiliac sprain/strain; depressive psychosis-moderate; disc herniation L3-4; protruding disc L4-5; degenerative osteoarthritis with facet syndrome left L3-4, L4-5 and L5-S1." Claim No. 83-15651 was allowed for "lumbar region sprain; idiopathic scoliosis; lumbar disc displacement." Claim No. 96-609318 was allowed for "lumbosacral sprain; lumbago." Claim No. 99-425233 was allowed for "ankle sprain; knee and leg sprain; ankle sprain; knee and leg sprain." Claim No. 00-349577 was allowed for "neck sprain; lumbar region sprain."
 {¶ 3} Relator filed an application for PTD compensation on April 5, 2004. Relator was required to provide his education and work histories on his application. Relator indicated that he left school after the eighth grade in 1963, but has since obtained his GED. In the 1970s, he underwent special training in welding. In the 1980s, relator attended "semi-trucking school." Relator agreed he could read, write and do basic mathematics.
 {¶ 4} Relator's work history indicates four periods of employment. From 1963 to 1982, relator was employed by Youngstown Steel Door, where his duties ranged from being a welder to a department supervisor. During 1982, relator was a welder-burner. From 1982 to 1983, he worked as a semi-truck driver. From 1983-2001, relator was employed by Tartan Textile as a route salesperson. Relator's duties involved loading the truck and picking up and delivering laundry. {¶ 5} On June 30, 2004, at the request of the commission, relator underwent a physical examination by R. Scott Krupkin, M.D., and a psychological examination by Robert L. Byrnes, Ph.D. After examining relator for the allowed physical conditions, Dr. Krupkin concluded that relator suffered 20 percent whole person impairment. Dr. Krupkin further determined that relator was able to perform sedentary employment.
 {¶ 6} Dr. Byrnes examined relator for his allowed mental condition, depressive psychosis — moderate. Dr. Byrnes opined that relator had reached maximum medical improvement at 25 percent whole person impairment. Dr. Byrnes completed an Occupational Activity Assessment, in which he noted that "[t]his claimant's allowed mental condition, in and of itself would not prevent his return to work in non-stressful, non-demanding jobs for which he is otherwise qualified."
 {¶ 7} On September 9, 2004, a staff hearing officer ("SHO") denied relator's application for PTD. The SHO relied upon the medical reports of Drs. Krupkin and Byrnes, but observed that no vocational evidence was submitted by either the commission or relator. The order noted that:
 The Staff Hearing Officer finds that [neither] the claimant, nor has the Industrial Commission presented any vocational evidence to establish that any of his non-medical disabilities have any impact on an evaluation of the claimant's ability to work or potential to be retrained. * * *
The SHO referred to the non-medical factors relator submitted in his PTD application as vocational evidence. After reviewing the evidence, the SHO issued an independent finding based upon the reports submitted and pertinent nonmedical factors that relator was capable of employment. The commission denied further administrative appeal.
 {¶ 8} Relator filed a mandamus action with this court, challenging the commission's finding that he was capable of employment based upon the nonmedical factors enumerated in relator's PTD application. Relator claimed that the commission's order failed to comply with State ex rel.Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167; State ex rel. Nollv. Indus. Comm. (1991), 57 Ohio St.3d 203; and State ex rel.Speelman v. Indus. Comm. (1992), 73 Ohio App.3d 757, because the commission did not adequately explain why it concluded that relator was capable of employment in light of his nonmedical factors. Relator argued that the commission could not reasonably find that he still had ten years of employability and was capable of working. Because the commission indicated that vocational evidence was not submitted, relator argued that the commission's order was not supported by the evidence of record.
 {¶ 9} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court. The magistrate rendered a decision on July 26, 2006, including findings of fact and conclusions of law. (Attached as Appendix A.) Based upon his application of the case law to these facts, the magistrate found that the SHO properly relied upon and analyzed the nonmedical factors in relator's PTD application to reach the conclusion that relator is capable of sustained remunerative employment. The magistrate further noted that evidence submitted by a vocational expert is not critical to a PTD determination because the commission possesses expertise on nonmedical issues. State ex rel. Jackson v. Indus.Comm. (1997), 79 Ohio St.3d 266, 271. Therefore, it was within the discretion of the SHO to note that, although no vocational reports were provided, relator's PTD application contained adequate information for vocational evidence. Based upon his findings, the magistrate recommended that this court deny relator's writ of mandamus.
 {¶ 10} On August 9, 2006, relator filed an objection to the magistrate's decision. Relator contends that both the magistrate and the commission failed to adequately address the Stephenson factors in reaching the conclusion to deny relator's claim for PTD compensation. Relator asserts that the commission's order is not supported by the evidence of record.
 {¶ 11} For a writ of mandamus to issue, relator must exhibit a legal right to relief from the determination of the commission and that the commission has a legal duty to provide such relief. State ex rel.Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. The right to relief is demonstrated by showing that the commission abused it discretion by entering an order not supported by the evidence of record. State ex rel.Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. However, where even some evidence of record supports the commission's order, there is no abuse of discretion and mandamus is not available. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56.
 {¶ 12} When rendering a determination on PTD compensation, the commission must consider the factors set forth in Stephenson.Stephenson requires the commission to take into consideration all physical, psychological and sociological conditions, as well as the claimant's age, education and work record. The commission must also identify the evidence relied upon and provide a comprehensive explanation and reasoning for its final determination. Noll, supra. "In complying with Noll, the emphasis should be on clarity, both as to evidence relied upon and the reason or reasons for the order."Speelman, at 761.
 {¶ 13} Relator does not dispute the fact that the commission cited theStephenson factors in its order. However, relator argues that, when viewed in conjunction with his allowed mental condition, his past work and educational histories cannot support a finding that he is capable of employment. Moreover, he notes that the commission did not specify any skills he may have obtained from previous employment that would transfer to sedentary, non-stressful work. Relator concludes that the commission failed to engage in the analysis required by Speelman,Stephenson and Noll when making its final determination. Accordingly, relator believes that the commission abused its discretion in denying his claim for PTD compensation; therefore, he is entitled to relief pursuant to State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315.
 {¶ 14} Although relator only completed the eighth grade of formal education, he did receive his GED. Furthermore, on two occasions, he went through specialized training; first, to become a welder, and second, to become a truck driver. The commission correctly noted that relator's application "suggests that the claimant has the skills and qualifications to perform other occupations or at least be retrained to perform some entry-level position on a sedentary basis, based upon his education and prior skilled managerial work history." Although the commission did not directly address relator's mental condition when discussing his nonmedical factors, it is evident from the commission's qualification that relator is capable of performing non-stressful, non-demanding jobs, that the commission took relator's mental limitations into consideration.[1]
 {¶ 15} In State ex rel. Ewart v. Indus. Comm. (1996),76 Ohio St.3d 139, 141, the Supreme Court of Ohio stated that "[t]he freedom to independently evaluate nonmedical factors is important because nonmedical factors are often subject to different interpretation." "Where the factors cited * * * readily suggest claimant's amenability to re-employment, the length of the commission's reasoning is generally immaterial, and mandamus relief will be denied." State ex rel. Singletonv. Indus. Comm. (1994), 71 Ohio St.3d 117, 119. The commission did not commit an abuse of discretion when considering relator's nonmedical factors. Moreover, the commission provided a sufficient discussion of those factors and how they support a finding that relator is capable of sustained remunerative employment. The factors support the commission's conclusion and are not an abuse of discretion. Therefore, we find that the commission carried out its obligation to analyze the pertinent nonmedical factors when it denied relator's claim.
 {¶ 16} Pursuant to Civ.R. 53(E)(4), we have conducted a full review of the magistrate's decision, relator's objection and submitted memoranda. For the foregoing reasons, we overrule relator's objection and adopt the magistrate's decision. Relator's request for a writ of mandamus is denied.
Objection overruled;
 Writ of mandamus denied.
BRYANT and McGRATH, JJ., concur.
APPENDIX A
 IN MANDAMUS {¶ 17} In this original action, relator, James G. Guy, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting said compensation.
 {¶ 18} Findings of Fact:
 {¶ 19} 1. Relator has five industrial claims. Claim No. 01-304336 is allowed for:
 Lumbosacral sprain/strain; sacroiliac sprain/strain; depressive psychosis-moderate; disc herniation L3-4; protruding disc 4-5; degenerative osteoarthritis with facet syndrome left L3-4, L4-5 and L5-S1.
 {¶ 20} Claim No. 83-15651 is allowed for "lumbar region sprain; idiopathic scoliosis; lumbar disc displacement."
 {¶ 21} Claim No. 96-609318 is allowed for "lumbosacral sprain; lumbago."
 {¶ 22} Claim No. 99-425233 is allowed for "ankle sprain; knee and leg sprain; ankle sprain; knee and leg sprain."
 {¶ 23} Claim No. 00-349577 is allowed for "neck sprain; lumbar region sprain."
 {¶ 24} 2. On April 5, 2004, relator filed an application for PTD compensation.
 {¶ 25} 3. Under the "education" section of the application, relator indicated that the eighth grade was the highest grade of school he had completed and this occurred in the year 1963. Relator further indicated that he has received a certificate for passing the General Education Development ("GED") test. He also has special training which he describes as "Welding in the 70's. Semi-trucking school in the 80's."
 {¶ 26} 4. The PTD application form poses three questions to the applicant: (1) "Can you read?" (2) "Can you write?" and (3) "Can you do basic math?" Given a choice of "yes," "no," and "not well," relator selected the "yes" response to all three queries.
 {¶ 27} 5. The PTD application form also requires the applicant to provide information regarding his work history. Relator listed four periods of employment.
 {¶ 28} The first period of employment was with "Tartan Textiles" and it spanned the period 1983 to 2001. During this approximately 18-year period, relator was employed in the laundry service as a "route salesperson." On the application, relator describes the basic duties of this employment as: "Load truck[,] deliver goods to custome[r]s. Pick up bags of dirty laundry, floor mats, uniforms and mops."
 {¶ 29} The second period of employment occurred from 1982 to 1983. During this period, relator was employed as a "Semi-Truck driver."
 {¶ 30} The third period of employment occurred during the year 1982. Relator was employed as a "welder-burner."
 {¶ 31} The fourth period of employment listed on the PTD application spanned the years 1963 to 1982. During this nearly 20-year period, relator was employed with "Youngstown Steel Door." On the application, relator describes his job as "Welder to Dept. Supervisor." He describes his basic duties: "As a welder, welding steel box car doors. As a supervisor, I was in charge of anywhere from 6 to 60 men."
 {¶ 32} 6. On June 30, 2004, at the commission's request, relator was examined by R. Scott Krupkin, M.D. Dr. Krupkin examined for all the allowed physical conditions in the five industrial claims. He determined that those allowed physical conditions produced a 20 percent whole person impairment.
 {¶ 33} 7. Dr. Krupkin also completed a Physical Strength Rating form on which he indicated that relator is capable of performing sedentary work.
 {¶ 34} 8. On June 30, 2004, at the commission's request, relator was examined by psychologist Robert L. Byrnes, Ph.D. Dr. Byrnes wrote:
 Based on the findings of the history and examination, it is my opinion that to a reasonable degree of medical probability Mr. Guy has reached maximum medical improvement relative to his allowed mental condition (Depressive Psychosis-Moderate).
 From the history it appears that Mr. Guy's activities of daily living have become more restricted, in some part because of his allowed mental condition. He has some social involvement, but reports being irritable. (This is probably partially due to his allowed mental condition). He is not involved in much purposeful activity. His adaptive capacity has been taxed.
 According to the AMA Guides to the Evaluation of Permanent Impairment IV, I find this claimant's impairment, associated with his allowed mental condition, to be as follows:
 • Activities of daily living — Mild to moderate • Social functioning — Moderate • Concentration, persistence and pace — Moderate • Deterioration or decompensation in work-like settings — Moderate
 In my opinion this examinee's overall impairment is moderate and I assign a 25% whole person impairment for his allowed mental condition only.
 {¶ 35} 9. Dr. Byrnes also completed an Occupational Activity Assessment form which asks the examining psychologist a two-part query:
 Based on the impairment resulting from the allowed/alleged psychiatric/psychological condition(s) only, can this injured worker meet the basic mental/behavioral demands required:
 [1.] To return to any former position of employment?
 [2.] To perform any sustained remunerative employment?
 {¶ 36} Dr. Byrnes responded "no" to the first query and "yes" to the second query.
 {¶ 37} On the Occupational Activity Assessment form, Dr. Byrnes wrote:
 This claimant's allowed mental condition, in and of itself would not prevent his return to work in non-stressful, non-demanding jobs for which he is otherwise qualified.
 {¶ 38} 10. Following a September 9, 2004 hearing, a staff hearing officer ("SHO") issued an order denying the PTD application. The SHO's order states:
 This order is based upon the reports of Dr. Krupkin as well as Dr. Byrnes.
 Dr. Krupkin, who examined the claimant on behalf of the Industrial Commission strictly regarding the claimant's orthopedic conditions only, indicated that the claimant has reached maximum medical improvement, and that he cannot return to his former position of employment but is capable of performing sedentary work which means exertions up to ten pounds of force frequently, to lift, carry, push, pull, or otherwise move objects. He further indicates that claimant being able to perform sedentary work, which is defined as claimant being able to perform occupations that would involve sitting most of the time and may involve walking or standing for brief periods of time. He further goes on to state that the claimant has a twenty percent permanent partial impairment with respect to the whole person as it relates to claimant's five industrial injuries from an orthopedic standpoint.
 Dr. Byrnes, who examined the claimant on behalf of the Industrial Commission, strictly regarding claimant's psychiatric condition for which claim number 01-304336 is recognized, indicated that claimant's condition has also reached maximum medical improvement and that he cannot return to his former position of employment but would be able to return to some sustained remunerative employment in a non-stressful non-demanding environment for which he is otherwise qualified. He further states that the claimant has a 25% permanent partial impairment with respect to the whole person as it relates to claimant's psychiatric condition for which claim number 01-304336 has been recognized.
 Therefore, based upon the opinions of Dr. Krupkin and Dr. Byrnes, who combined examined the claimant on all of the allowed conditions for which claimant's five industrial injuries are recognized, the Staff Hearing Officer concludes, on a whole, that the claimant is medically capable of performing some sustained remunerative employment, i.e. sedentary work in a non-stressful non-demanding environment. Therefore, the Staff Hearing Officer finds that a discussion of the claimant's non-medical disability factors are now in order.
 Claimant is 58 years of age and has an eighth grade education, but subsequently did receive his GED. Claimant has furthered his education by attending welding and semi-truck driving school in order to be a certified welder and licensed semi-truck driver, but to what extent as to completion is unknown as claimant failed to elaborate such information on his IC-2 Application, nor appear at today's hearing. Claimant indicates on the IC-2 Application on file, the ability to read, write, and do basic math. Claimant's work history consists of working at Youngstown Steel Door for approximately twenty years as a laborer and welder supervisor early on in his working career welding steel box car doors and supervising six to sixty men, but also worked as a semi-truck driver delivering goods for a couple of years, but primarily worked the latter part of his working career as a route delivery driver for the above-stated employer for approximately eighteen years performing duties as loading trucks, delivering goods to customers, as well as picking up bags of dirty laundry, floor mats, uniforms and etc.
 The Staff Hearing Officer finds that the claimant, nor has the Industrial Commission presented any vocational evidence to establish that any of his non-medical disabilities have any impact on an evaluation of the claimant's ability to work or potential to be retrained. The Staff Hearing Officer finds on a whole after a thorough review of claimant's age, education, and work history, that claimant's non-medical disability factors do not have a negative impact on the claimant's ability to work or to be retrained, but rather are to be viewed as positive factors from a vocational viewpoint.
 As indicated before, the Staff Hearing Officer finds that the claimant's age is a positive factor, as the claimant's age of 58 leaves approximately ten years of working life ahead of him.
 The Staff Hearing Officer finds that the claimant's education is also a positive factor. The claimant's high school equivalent education, as claimant did obtain his GED in and of itself may not necessarily provide claimant with present time skills, but is evidence claimant's ability to learn new skills conductive to at least an entry level position on a sedentary basis. Furthermore, the Staff Hearing Officer finds that claimant's eighth grade education which can be classified as a lower scaled limited education in and of itself does not indicate a lack of intellectual ability to be retrained as claimant indicated on his IC-2 Application on file, that he did obtain his GED and is able to read, write, and do basic math.
 Furthermore, the claimant's work history is also definitely a positive factor. The claimant working as a delivery driver, semi-truck driver, as well as a welder/supervisor indicates employment predominately ranging from semi-skilled to skilled positions with managerial/supervisory experience which indicates and suggests that the claimant has the skills and qualifications to perform other occupations or at least be retrained to perform some entry-level position on a sedentary basis, based upon his education and prior skilled managerial work history.
 Therefore, based upon the limited physical restrictions as indicated by Dr. Krupkin, and Byrnes who indicate that he can perform sedentary work in a non-stressful non-demanding work environment, coupled with the claimant's age with approximately ten years of working life ahead of him, high school equivalent education, and skilled work history with managerial/supervisory experience which will not effect his ability to meet the basic demands of entry-level work, the Staff Hearing Officer finds on a whole that the claimant's non-medical disability factors favor re-employability or that the claimant can at least be retrained to perform other occupations, i.e. unskilled and/or entry-level work in a sedentary non-stressful non-demanding work environment, and is therefore not permanently totally disabled and not precluded from all sustained remunerative employment.
 {¶ 39} 11. On November 16, 2005, relator, James G. Guy, filed this mandamus action.
Conclusions of Law:
 {¶ 40} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 41} For its threshold medical determination, the commission, through its SHO, relied upon the reports of Drs. Krupkin and Byrnes to support its finding that relator is medically able to perform sedentary work in a non-stressful, non-demanding work environment. In this action, relator does not challenge the reports of Drs. Krupkin and Byrnes as providing some evidence to support the commission's threshold medical finding. However, relator does challenge the commission's analysis of the non-medical factors.
 {¶ 42} To begin, relator characterizes the following comment of the SHO as "troublesome":
 The Staff Hearing Officer finds that the claimant, nor has the Industrial Commission presented any vocational evidence to establish that any of his non-medical disabilities have any impact on an evaluation of the claimant's ability to work or potential to be retrained. * * *
 {¶ 43} In his brief, relator states: "If the Commission felt is was necessary to obtain vocational evidence, the burden was on the Commission to obtain that evidence." (Relator's brief at 10.) Relator seems to suggest that the commission penalized relator because he did not submit a vocational report. The magistrate rejects relator's suggestion.
 {¶ 44} The commission may credit offered vocational evidence, but expert opinion is not critical or even necessary, as the commission is the expert on the non-medical issue. State ex rel. Jackson v. Indus.Comm. (1997), 79 Ohio St.3d 266, 271.
 {¶ 45} Here, the SHO's comment simply recognizes the undisputed fact that neither relator nor the commission chose to submit a report from a vocational expert. It was entirely appropriate for the SHO to recognize this undisputed fact in his order. The SHO's comment is not troublesome. Rather, it simply indicates that the SHO was aware of the record before him and that he understood that he would be required to perform the non-medical analysis without the aid of vocational reports.
 {¶ 46} Given the lack of any vocational reports and the absence of testimony from relator at the hearing, much of the vocational information for the SHO to analyze came from the PTD application itself. The SHO's order presents a detailed analysis of how this information supports the SHO's conclusion that the non-medical factors combine with the industrial injury to permit sustained remunerative employment.
 {¶ 47} Here, relator criticizes the SHO's analysis of the non-medical factors in a way that invites this court to adopt relator's interpretation of the vocational information provided by the PTD application. This is inappropriate in mandamus.
 {¶ 48} As the court noted in State ex rel. Ewart v Indus. Comm.
(1996), 76 Ohio St.3d 139, 141, non-medical factors are often subject to different interpretations. It is the commission that interprets the non-medical evidence and that interpretation will not be disturbed by this court absent an abuse of discretion.
 {¶ 49} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
[1] Relator suggests that the commission was remiss in not taking into consideration the fact that relator was often rebellious and involved in fights for the short time that he attended school. Relator further encourages the court to take notice of the fact that he was held back twice in the seventh grade. It is up to the discretion of the commission of how much weight to place on nonmedical factors. However, we find that the commission did not err in placing little weight on events that occurred when relator, who is 58, was still a child.