DECISION
{¶ 1} Karol A. Canady filed this action in mandamus seeking a writ to compel the Industrial Commission of Ohio ("commission") to grant her application for permanent total disability ("PTD") compensation.
 {¶ 2} In accord with local rules, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then prepared and filed a magistrate's decision which contains detailed findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate's decision includes a recommendation that we deny the requested relief.
 {¶ 3} Counsel for Ms. Canady has filed objections to the magistrate's decision. Counsel for the commission has filed a memorandum in response. The case is now before the court for review.
 {¶ 4} Ms. Canady was injured on two separate occasions. Her workers' compensation claims have now been recognized for "sprain of neck; contusion of back; sprain lumbar region; lumbosacral disc protrusion at L4-5, L5-S1; lumbar radiculopathy; psychogenic pain and disc protrusion C3-4, C4-5 and C5-6."
 {¶ 5} When a staff hearing officer ("SHO") ruled upon Ms. Canady's application for PTD compensation, the SHO listed only the medical conditions related to one of the two sets of injuries suffered. However, the SHO clearly was aware of both sets of injuries, since the SHO's order specifically mentions the dates of the injuries and the conditions surrounding the injuries. The SHO also relied upon a report of an M.D. and a report of a psychiatrist. The psychiatrist was evaluating Ms. Canady for psychogenic pain which was a condition recognized as a result of the second injury. The M.D., Robin G. Stanko, evaluated Ms. Canady for all her medical conditions as indicated in Dr. Stanko's *Page 3 
report. The SHO clearly considered all the recognized conditions, even though the SHO's order fails to list the cervical disc protrusions among the recognized conditions. The objections to the magistrate's decision with respect to the defect in the SHO's order are overruled.
 {¶ 6} The second set of objections deals with the SHO's consideration of a vocational report which predated the filing of the application for PTD compensation and which counsel for Ms. Canady argues includes a number of errors. The reports of Julie Morrissey, M.A., CRC, also relied upon medical reports filed with respect to a prior application for PTD compensation and were authorized without benefit of Dr. Stanko's examination and report.
 {¶ 7} The commission is considered the ultimate expert as to vocational evaluation and, as such, does not need to rely upon the report of any other vocational expert. However, when the commission and its SHOs rely upon the report of a vocational specialist, the report needs to be accurate to constitute some evidence in support of the resulting ruling with respect to an application for PTD compensation.
 {¶ 8} Dr. Stanko's medical report, upon which the SHO relied, limited Ms. Canady to sedentary work. The only medical report which was provided to Ms. Morrissey was a medical report which indicated that Ms. Canady was capable of light work. All of Ms. Canady's past employment was in jobs which required either light or medium strength levels. Thus, Ms. Morrissey was presented with a situation where Ms. Canady could be expected to return to one of her former job classifications. By the time the SHO addressed Ms. Canady's second PTD compensation application, this was no longer the *Page 4 
case. A second change was the fact that Ms. Canady had not engaged in sustained gainful activity since July 30, 1999.
 {¶ 9} The SHO's order denying Ms. Canady's second application for PTD compensation, however, does not rely upon Ms. Morrissey's report for its bottom line, but only for Ms. Morrissey's view that Ms. Canady had performed skilled and semi-skilled labor in the past. This use of Ms. Morrissey's report is not really an evaluation of future employability, an evaluation the SHO made independently under the circumstances. The minimal use of Ms. Morrissey's report does not affect the fact that some evidence existed to deny Ms. Canady's application for PTD compensation.
 {¶ 10} The remaining objections to the magistrate's decision are overruled.
 {¶ 11} As a result, we adopt the findings of fact and conclusions of law in the magistrate's decision. We therefore deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
FRENCH and DESHLER, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution. *Page 5 
 (APPENDIX A) MAGISTRATE'S DECISION Rendered on March 6, 2007 IN MANDAMUS {¶ 12} In this original action, relator, Karol A. Canady, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to *Page 6 
vacate its order denying her permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact: {¶ 13} 1. On October 19, 1998, relator sustained an industrial injury while employed as a "Teacher's Associate" or "Nursery School Attendant" for respondent Westside-Eastside Child Care Centers A, a state-fund employer. On that date, as she was attempting to close a window, the window fell on her head causing immediate neck pain. A co-worker transported relator to an emergency room hospital where she was treated and released. The industrial claim was initially allowed for "sprain of neck," and assigned claim number 98-548057.
 {¶ 14} 2. On July 30, 1999, relator sustained another industrial injury while she was participating in a rehabilitation program sponsored by the Ohio Bureau of Workers' Compensation ("bureau"). On that date, as she was lifting a bin as part of a work-hardening program, she lost her balance and fell backwards, injurying her lower back. This industrial claim is allowed for "contusion of back; sprain lumbar region, [lumbo-sacral] disc protrusion at L4-5, L5-S1; lumbar radiculopathy; psychogenic pain," and is assigned claim number 99-553502.
 {¶ 15} 3. On January 8, 2004, relator filed an application for PTD compensation. This PTD application is not directly at issue in this action.
 {¶ 16} 4. Relator's January 8, 2004 PTD application prompted the commission to request an employability assessment report from Julie Morrissey, a vocational expert. The Morrissey report, dated June 18, 2004, provides the following analysis of relator's work history: *Page 7 

Job Title * * * Skill Level Strength Level Dates
Nursery School Attendant * * * Semi-skilled Light 1992 to 1998
Child Monitor * * * Semi-skilled Medium 1987 to 1992
Pantry Goods Maker * * * Semi-skilled Light 1986 to 1987
Program Aide, Group Work * * * Skilled Light 1976 to 1978
Nurse Assistant * * * Semi-skilled Medium 1973 to 1974

 {¶ 17} 5. The Morrissey report also lists so-called "Employability Options" based upon reports from Drs. Timothy J. Fallon, M.D., and Lee Howard, Ph.D.
 {¶ 18} Indicating that Dr. Fallon opined that relator is "[c]apable of light work," Morrissey lists the following employment options: "Office Clerk; Mail Clerk; Assembler, Small Product; Routing Clerk."
 {¶ 19} Indicating that Dr. Howard, a psychologist, opined that relator is "[c]apable of former work and other employment," Morrissey lists the same employment options listed for Dr. Fallon's report.
 {¶ 20} 6. Earlier, following a February 3, 2004 hearing before a staff hearing officer ("SHO"), the commission additionally allowed industrial claim number 98-548057 for "disc protrusion C3-4, C4-5, and C5-6."
 {¶ 21} 7. Following a November 5, 2004 hearing, an SHO issued an order denying relator's January 8, 2004 PTD application. In analyzing the nonmedical factors, the SHO relied upon the Morrissey report. As previously alluded, the SHO's order of November 5, 2004, is also not directly at issue in this action.
 {¶ 22} 8. On September 1, 2005, relator filed her second application for PTD compensation. The commission adjudication of this application is at issue in this action. *Page 8 
 {¶ 23} 9. Among other information sought, the PTD application form posed three questions: (1) "Can you read?" (2) "Can you write?" and (3) "Can you do basic math?" Given a choice of "yes," "no" and "not well," relator selected the "yes" response for all three queries.
 {¶ 24} 10. The PTD application form asks the applicant to provide information regarding the applicant's work history. The application form also asks the applicant to describe the reading and writing performed with respect to each job held. With respect to the job she held on the date of her injury ("Teacher Associate]"), relator explained: "Read stories to children, lesson book, attendance report, order supplies, permission slips, medical forms for medications."
 {¶ 25} 11. On November 8, 2005, at the commission's request, relator was examined by Robin G. Stanko, M.D. In his three-page narrative report, Dr. Stanko lists the allowed conditions as follows: "Contusion of back, sprain lumbar region, lumbosacral disc protrusion at L4-5 and L5-S1; lumbar radiculopathy, psychogenic pain, neck sprain, disc protrusion C3-4, C4-5, and C5-6."
 {¶ 26} In the concluding paragraph of his report, Dr. Stanko opined:
 * * From my examination and review of the file including treatments rendered for this condition, it is my opinion that this claimant has reached maximal medical improvement and that the condition has become permanent. Based on the AMA Guides to the Evaluation of Permanent Impairment, Fifth Edition, in my opinion, the impairments of the claimant place her in DRE Lumbar Category III using Table 15-3 (page 384) and DRE Cervical Category II using Table 15-5 (page 392); giving her a permanent impairment of 17% whole person for the allowed musculoskeletal conditions in this claim. I feel the claimant could perform work activity at sedentary work levels, that is lifting up to 10 pounds. *Page 9 
(Emphasis sic.)
 {¶ 27} 12. On a physical strength rating form dated November 8, 2005, Dr. Stanko indicated that relator is capable of performing sedentary work.
 {¶ 28} 13. On January 9, 2006, relator was examined, at the commission's request, by psychiatrist Richard H. Clary, M.D. In his five-page narrative report, Dr. Clary indicates that he examined only for the allowed "psychogenic pain disorder." Under the heading "Mental Status Exam," Dr. Clary wrote:
 f. Sensorium and Cognitive Functioning
 She was alert and oriented to person, place, and time. Her concentration was good and her long term memory was intact. Her short term memory was inconsistent during this part of the evaluation. She appears to be of average intelligence based on her general fund of knowledge and her educational level. There is no evidence of any cognitive impairments.
 g. Insight and Judgement
 Her insight is fair and her judgement is intact.
 {¶ 29} Dr. Clary concluded:
 In my medical opinion, the allowed psychiatric condition in claim number 98-548057 causes a 10 percent permanent partial impairment of the whole person based on the AMA Guides Fifth Edition. In my medical opinion, Ms. Canady has reached maximum medical improvement. She has been treating with her psychologist for 2-3 years and has also been seeing a psychiatrist for about 1 year. In my medical opinion, the average length of treatment for the allowed psychiatric condition would be 1 year and Ms. Canady has had more than the average amount of treatment.
 In my medical opinion, her allowed psychiatric condition does not cause permanent total disability. I completed the Occupational Activity Assessment and have included it with my report. *Page 10 
 {¶ 30} 14. In support of her PTD application, relator submitted a vocational report from Molly S. Williams dated February 6, 2006. In her four-page report, Williams concludes:
 * * [W]hen the disability factors are correctly identified, stated, and considered: an individual unable to perform her customary past relevant work as either a Teacher's Associate or as a Nanny; an individual of advanced age (age fifty-five or over); an individual with a high school education completed in the remote past (1966); an individual with no transferable skill(s); and an individual not expected to make a vocational adjustment to other work based upon the allowed physical impairments as assessed by The Industrial Commission's Specialist, Robin G. Stanko, M.D., it is obvi-ous that the claimant is permanently and totally disabled.
 {¶ 31} 15. Following an April 28, 2006 hearing, an SHO issued an order denying relator's PTD application. The SHO's order explains:
 Claimant is a 58 year old female with a high school education and a work history including experience as a teacher associate, nanny, nurses' aide, program coordinator for a boys and girls club, and kitchen worker (salad prep). Her first industrial injury occurred on 10/19/1998 while she was working as a teacher associate when a window she was closing fell in on her, striking her head and injuring her neck. Treatment for the allowed conditions has been conservative. The second industrial injury occurred on 07/30/1999 while she was participating in a Bureau of Workers' Compensation rehabilitation program under the 1998 claim when, as she was lifting a bin as part of a work hardening program, she lost her balance and fell backward, injuring her low back. Treatment has been conservative for this injury as well. Claimant also receives treatment for the psychological condition recognized in the claim by order dated 09/19/2002. According to her IC-2 Application, the claimant last worked on 11/13/1998, shortly after her neck injury.
 Dr. Clary, a psychiatrist, examined the claimant on 01/06/2006 regarding the psychological condition recognized in claim 99-553502 and the permanent total impairment issue. Dr. Clary's report indicates that during the course of his *Page 11 
examination of the claimant, she demonstrated average intelligence, with thoughts that were logical, coherent, and goal-directed, with her concentration good, her long-term memory intact, and her capacity for insight and judgment also intact. Based on his examination findings, Dr. Clary concluded that the claimant is capable of returning to work at her former position of employment and that the impairment arising from the allowed psychological condition does not result in any work limitations.
 Based on the report of Dr. Clary, which is persuasive, the Staff Hearing Officer finds that the impairment arising from the allowed psychological condition does not prevent the claimant from returning to work at her former position of employment.
 Dr. Stanko, a physical medicine and rehabilitation specialist, examined the claimant on 01/06/2006 regarding the allowed physical conditions of the two claims and the permanent total impairment issue. Based on his examination findings, Dr. Stanko concluded that the claimant is capable of performing sedentary work.
 Based on the report of Dr. Stanko, which is persuasive, the Staff Hearing Officer finds that when only the impairment arising from the allowed conditions of the two claims is considered, the claimant has the residual functional capacity to perform sedentary work activity. Furthermore, when her degree of medical impairment is considered in conjunction with her non-medical disability factors, the Staff Hearing Officer finds that the claimant is capable of sustained remunerative employment and is not permanently and totally disabled.
 The Staff Hearing Officer finds that while the claimant's age is an impediment to her potential for returning to the workforce, it is not an insurmountable barrier to that potential. Individuals of the claimant's age have more than sufficient time to pursue the acquisition of new job skills, at least through informal means such as short-term or on-the-job training, that could enhance their potential for re-employment. In this regard, the Staff Hearing Officer com-mends the claimant for participating in a Bureau re-habilitation program subsequent to her initial injury in 1998. Unfortunately, the program ended when the claimant sustained the injury to her low back while performing work hardening activities. However, the Staff Hearing Officer *Page 12 
finds no evidence on file to support a finding that, in the years that have passed subsequent to the stabilization of her low back conditions after the 1999 injury in the rehabilitation program, the claimant has made any attempt to retrain or otherwise acquire new job skills. As set forth in State ex rel. Speelman v. Industrial Commission (1992) 73 Ohio App. 3d 757, and more recently in State ex rel. Cunningham v. Industrial Commission (2001) 91 Ohio St. 3d 261, the Commission, when considering a claim for permanent total disability, may consider not only past employment skills, but also those skills which may reasonably be developed; accordingly, the Commission may take into account the lack of effort by a claimant to pursue new skills that might have led to a return to employment.
 The Staff Hearing Officer considers the claimant's high school education to be a strong vocational asset regarding her return-to-work potential. The Staff Hearing Officer notes that on her current IC-2 Application, as well as on the prior application, the claimant indicated that her past work as a nanny and teacher associate required her to read to children, and she also would have filled out charts and reports in her work as a nurses' aide. In this regard, the Staff Hearing Officer finds that the jobs that make up the claimant's work history are properly classified at the semi-skilled and skilled level, according to the vocational assessment report from Ms. Morrissey dated 06/18/2004. Although that vocational assessment report was prepared as part of the processing of the claimant's prior application for permanent total disability, the classification of the claimant's past work remains valid. Accordingly, the claimant has demonstrated the capacity to learn the skills necessary to successfully perform skilled and semi-skilled work activity, and the Staff Hearing Officer finds that when her age, education, and literacy skills are considered in the context of the specific findings from Dr. Clary's report cited above regarding her thought process, concentration, insight, and judgment, the claimant currently retains the capacity to acquire new job skills, at least through informal means. Accordingly, the Staff Hearing Officer finds that the claimant possesses more than sufficient intellect to obtain and perform work activity consistent with her claim-related functional limitations.
 Finally, the Staff Hearing Officer finds that the claimant is currently vocationally qualified to obtain and perform jobs at *Page 13 
the sedentary level, as set forth in the report of Dr. Stanko. This finding is based in part on the fact that the Dictionary of Occupational Titles identifies positions the requirements of which fall within the restrictions identified by Dr. Stanko and for which minimal learning time is required. In addition, as indicated above, the claimant is qualified by age, education, and skilled/semi-skilled work history to acquire new job skills, at least through informal means, a capacity which if exercised could serve to widen the scope of employment options available to her.
 Therefore, because the claimant has the residual functional capacity to perform sedentary work activity when only the impairment arising from the allowed conditions is considered, because she is qualified by age, education, and skilled/semiskilled work history to obtain and perform work at that level, and because she retains her demonstrated capacity for acquiring new job skills when her age and education are considered, the Staff Hearing Officer finds that the claimant is capable of sustained remunerative employment and is not permanently and totally disabled. Accordingly, the IC-2 Application filed 09/01/2005 is denied.
(Emphasis sic.)
 {¶ 32} 16. Prior to the narrative explanation for the decision as quoted above, the SHO's order lists only the allowed conditions for claim number 99-553502. There is no listing of the allowances for claim number 98-548057. However, the order does state that both claims were heard.
 {¶ 33} 17. On July 5, 2006, relator, Karol A. Canady, filed this mandamus action.
Conclusions of Law:
¶ 31 Two main issues are presented: (1) whether the commission considered all allowed conditions of both industrial claims, and (2) whether it was an abuse of discretion for the commission to rely in part on a vocational report that predates the filing of relator's PTD application at issue here. *Page 14 
¶ 32 The magistrate finds: (1) the commission's order indicates that all allowed conditions of both industrial claims were considered, and (2) there was no abuse of discretion in the commission's partial reliance upon the Morrissey report which predates the filing of the PTD application at issue here.
¶ 33 Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 34} Turning to the first issue, the Supreme Court of Ohio has repeatedly held that, in determining whether a claimant is permanently and totally disabled, the commission must consider all the allowed conditions. State ex rel. Johnson v. Indus. Comm. (1988),40 Ohio St.3d 339. (The claimant's PTD application was supported by a report from psychiatrist, G.M. Sastry, who found claimant to be permanently totally disabled. The commission exclusively relied upon a report from Dr. Colquitt, who evaluated only the physical conditions.) State ex rel.Cupp v. Indus. Comm. (1991), 58 Ohio St.3d 129. (The "numerous serious conditions" additionally allowed in the claim were not mentioned in the commission's order nor evaluated by Dr. McCloud upon whom the commission exclusively relied.) State ex rel. Didiano v. Beshara (1995),72 Ohio St.3d 255. (Claimant's "serious psychiatric condition," major depression, was not evaluated by the two doctors' reports upon whom the commission relied.) State ex rel. Roy v. Indus. Comm. (1996),74 Ohio St.3d 259. (Following the PTD hearing, claimant moved to amend his claim to include a psychiatric condition. The commission added the psychiatric claim allowance, but failed to consider it when it denied reconsideration.) *Page 15 
 {¶ 35} In State ex rel. Zollner v. Indus. Comm. (1993),66 Ohio St.3d 276, the commission failed to list "dysthymic disorder" as an allowed condition in its order denying PTD compensation. The Zollner court stated:
 Claimant's first assertion is grounded in the omission of "dysthymic disorder" from the enumerated conditions in the permanent total disability order. Relying on State ex rel. Johnson v. Indus. Comm. (1988), 40 Ohio St.3d 339, * * * claimant contends that the omission constitutes an abuse of discretion. Johnson, however, is distinguishable. There, as here, the commission's order did not list an allowed psychiatric condition among the allowed conditions. However, in Johnson, the evidence upon which the commission relied to deny permanent total disability related solely to the claim-ant's physical condition. These two factors led us to question whether the commission indeed considered all allowed conditions. The order was accordingly returned for clarification.
 In this case, permanent total disability denial was premised "particularly" on the reports of Dr. Steiman and Dr. Pritscher, who evaluated claimant's physical and psychiatric conditions respectively. Thus, the commission clearly took claimant's psychiatric condition into account in denying permanent total disability.
(Emphasis sic.) Id. at 277-278.
 {¶ 36} The SHO's order of April 28, 2006, at issue here, fails to list the allowed conditions for claim number 98-548057, although it clearly indicates that both claims were heard. However, the commission relied upon the report of Dr. Stanko who did examine relator for the allowed conditions in claim number 98-548057. Thus, because the commission relied upon Dr. Stanko's report, it necessarily considered the allowed conditions for which Dr. Stanko examined. Zollner.
 {¶ 37} The second issue is whether the commission abused its discretion by relying upon the Morrissey report, which predates the filing of the PTD application. *Page 16 
 {¶ 38} According to relator, because Morrissey rendered employability options based upon reports from Drs. Fallon and Howard, whose examinations occurred during April 2004, the Morrissey report cannot be used as evidence relating to the instant PTD application. According to relator, Morrissey's entire report must be eliminated from evidentiary consideration because allegedly Morrissey did not evaluate "the current evidence" relating to the instant PTD application. (Relator's brief, at 7.) The magistrate disagrees with relator's argument.
 {¶ 39} The SHO's order of April 28, 2006, relies only upon the work history portion of the Morrissey report. The SHO's order does not rely upon the employability options that relate to the reports of Drs. Fallon and Howard. Thus, the SHO correctly states:
 * * * [T]he Staff Hearing Officer finds that the jobs that make up the claimant's work history are properly classified at the semi-skilled and skilled level, according to the vocational assessment report from Ms. Morrissey dated 06/18/2004. Although that vocational assessment report was prepared as part of the processing of the claimant's prior application for permanent total disability, the classification of the claimant's past work remains valid. * * *
 {¶ 40} Thus, the commission did not abuse its discretion by relying in part upon the Morrissey vocational report.
 {¶ 41} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1