DECISION
{¶ 1} Relator, Gwen Bree Eden ("relator"), filed this original action requesting issuance of a writ of mandamus directing respondent, Industrial Commission of Ohio *Page 2 
("commission"), to vacate its order denying her application for permanent total disability ("PTD") compensation, and to issue an order finding that she is entitled to that compensation.
 {¶ 2} We referred this matter to a magistrate pursuant to Rule 12(M) of this court and Civ.R. 53. The magistrate issued a decision dated January 28, 2008 (attached as Appendix A) denying the requested writ. Relator filed objections to the magistrate's decision, arguing essentially the same issues as had been raised before the magistrate. Memoranda in opposition to those objections were filed by the commission and by the employer, respondent Elder-Beerman Operations, LLC.
 {¶ 3} In her objections, relator argues that the magistrate abused his discretion in finding that any deterioration in relator's condition had not been linked to the injuries for which her claim was allowed, and in finding that relator had not undertaken any efforts to rehabilitate herself in order to return to work.
 {¶ 4} Following our independent review, we find that the magistrate properly determined the facts and correctly applied the appropriate law. Consequently, we overrule relator's objections, and adopt the magistrate's decision as our own including the findings of fact and conclusions of law contained therein. Therefore, the writ requested by relator is denied.
Objections overruled. Writ of mandamus denied.
 BRYANT and KLATT, JJ., concur. *Page 3 
 APPENDIX A MAGISTRATE'S DECISION Rendered January 28, 2008 IN MANDAMUS {¶ 5} In this original action, relator, Gwen Bree Eden, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to *Page 4 
vacate its order denying her application for permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact: {¶ 6} 1. On March 19, 1991, relator sustained an industrial injury while employed as a "beauty advisor" in a retail department store operated by respondent Elder Beerman Operations, LLC ("employer"), a self-insured employer under Ohio's workers' compensation laws. The industrial claim is allowed for "cervical and thoracic strain; somatoform pain disorder; dysthymic disorder," and is assigned claim number L71661-22.
 {¶ 7} 2. On November 24, 1997, relator filed her first application for PTD compensation.
 {¶ 8} 3. On March 19, 1998, at the commission's request, relator was examined by Arnold R. Penix, M.D. In his narrative report, Dr. Penix opined:
 * * * The industrial injury does prevent the claimant from performing heavy labor and medium labor-type occupations. However, her work as a beauty advisor does seem to be more of a light duty occupation and it is my opinion the claimant could resume this type of employment.
 * * * The claimant does have the physical capacity to engage in sustained remunerative employment at a sedentary activity level.
 {¶ 9} 4. On March 19, 1998, Dr. Penix also completed an occupational activity assessment form.
 {¶ 10} 5. Earlier, on March 17, 1998, at the commission's request, relator was examined by psychologist Earl F. Greer. In his narrative report, Mr. Greer opined: *Page 5 
 * * * Her degree of permanent emotional impairment due to her industrial accident on 3/19/91, and referenced by the AMA Guide to Permanent Impairments (4th and 2nd editions); is presently estimated at Class II/15%.
 * * * The degree of emotional impairment from her industrial accident on 3/19/91 would currently not be expected to solely prevent her from returning to her former position of employment. Work would be expected to be therapeutic, enhancing self-worth; but with motivation a significant factor.
 {¶ 11} 6. On March 17, 1998, Mr. Greer also completed an occupational activity assessment form. On the form, Mr. Greer indicated that relator can return to any former position of employment and she can perform any sustained remunerative employment.
 {¶ 12} 7. Following a February 1, 1999 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application filed November 24, 1997. In his order, the SHO stated reliance upon the reports of Dr. Penix and Mr. Greer, and concluded that relator "would not be precluded from returning to her former position of employment."
 {¶ 13} 8. On August 11, 2005, relator filed her second PTD application, the denial of which relator challenges here.
 {¶ 14} 9. On October 26, 2005, at the employer's request, relator was examined by David C. Randolph, M.D. In his report dated November 3, 2005, Dr. Randolph states: "It is my opinion this claimant is perfectly capable of returning to her previous level of work activities if she were so motivated."
 {¶ 15} 10. On March 4, 2006, at the commission's request, relator was examined by James T. Lutz, M.D. In his narrative report, Dr. Lutz wrote:
 * * * Reference is made to the Fifth Edition of the AMA Guides Revised in arriving at the following impairment *Page 6 
assessment. For cervical strain: Utilizing table 15-5 the claimant warrants a DRE category II, which equals a 7% whole person impairment. For thoracic strain: Utilizing table 15-4 the claimant warrants a DRE category II, which equals a 7% whole person impairment. Combining 7+7 the claimant warrants a 14% whole person impairment.
 {¶ 16} 11. On April 4, 2006, Dr. Lutz completed a physical strength rating form. On the form, Dr. Lutz indicated that relator is capable of performing sedentary work.
 {¶ 17} 12. Earlier, on April 3, 2006, at the commission's request, relator was examined by psychologist Donald J. Tosi, Ph.D. In his narrative report dated April 12, 2006, Dr. Tosi wrote: "This Injured Worker is able to return to her former position without restrictions."
 {¶ 18} 13. Earlier, In a report dated March 11, 2006, on behalf of the employer, psychologist Jennifer J. Stoeckel, Ph.D., indicated that she had originally evaluated relator in October 2005. In her March 11, 2006 report, Dr. Stoeckel wrote:
 * * * [T]he allowed Somatoform Disorder and Dysthymic Disorder, as they relate to the 1991 work injury, do not render Ms. Eden permanently and totally disabled nor would she have any psychological restrictions associated with those conditions. However, I believe that Ms. Eden would have considerable difficulty in the workforce secondary to an unrelated personality disorder.
 {¶ 19} 14. At the employer's request, vocational expert Howard L. Caston, Ph.D.,
 issued a vocational report dated June 6, 2006, stating: Recent medical information indicates that there are no restrictions that rule out work activity including her prior work. The record indicates that Ms. Eden has other non-industrial related medical and psychological problems including but not limited to: fibromyalgia, hypertension, and back problems.
 * * * *Page 7 
 Her work history has given her skills related to other jobs including but not limited to: cosmetic sales, sales cashier, customer service, counter sales, bookkeeper, billing clerk, teller, and others[.]
 Since she has dealt with customers in the past she has the ability to perform other customer service.
 Since she has worked as a cashier she has the ability to perform sales cashiering work. Since she has worked in a bank performing various duties, she is capable of working as a teller or customer service representative in a bank.
 Since this individual does have a high school GED, she is not at a severe disadvantage in seeking other employment.
 Since she is able to drive and observed driving with no difficulty, Ms. Eden is able to access jobs in her geographical area of residence.
 Since she has been observed performing extensive driving, shopping, carrying objects, she is capable of accessing work.
 In my evaluation report dated May 20, 1998, I stated that this individual had acquired skills in her prior work that are transferable to non strenuous jobs. There has been no change in her allowed claim or work history that would change this original opinion.
 There are no medical limitations due to the allowed claim to account for the extensive length of time Ms. Eden has been unemployed.
 Therefore, the restrictions related to this individual's allowed claim do not prevent her from engaging in employment and do not prevent her from engaging in her prior occupation as a beauty advisor. If restricted to less strenuous work. This job can be easily modified. She also has skills and abilities that would allow her to perform jobs not necessarily closely related to her prior work. *Page 9 
 {¶ 20} 15. Following an April 17, 2007 hearing, an SHO issued an order denying relator's PTD application filed August 11, 2005. The SHO's order explains:
 All relevant medical and vocational reports on file were reviewed and considered in arriving at this decision.
 The injury that is recognized in this claim occurred on 03/19/1991, when the injured worker, in her capacity as a beauty advisor, slipped at work three times causing a twisting injury to her neck and upper back. The claim was initially allowed for a CERVICAL STRAIN AND A THORACIC STRAIN.
 In 1992, the claim was amended to include the psychological conditions: SOMATOFORM PAIN DISORDER AND DYSTHYMIC DISORDER.
 The present application is based upon the medical report of Dr. James Lundeen, dated 06/23/2005. Dr. Lundeen's opinion is based upon the allowed soft tissue conditions in the claim. The injured worker has not submitted a psychological medical report in support of her application.
 Previously, the injured worker filed an application for Permanent Total Disability on 11/24/1997. By Industrial Commission order dated 02/01/1999, the injured worker's application was denied.
 At hearing, the injured worker was questioned extensively by the Staff Hearing Officer regarding her course of medical care since the 02/01/1999 denial of her 11/24/1997 Permanent Total Disability Application.
 The injured worker testified that her care since 02/01/1999 has been limited to an extensive and modulating course of prescription medication treatment modalities. The injured worker also testified that she "feels" that her condition has deteriorated.
 The injured worker further confirmed by her testimony that she has not undertaken any rehabilitation program through the auspices of either the Bureau of Workers' Compensation or the self-insured employer. *Page 9 
 The injured worker further testified that she did briefly return to employment with National City Bank in 2001, but was fired within her 90-day probationary period. No documentation has been submitted regarding the events of her employment or termination.
 The injured worker was examined at the request of the Industrial Commission by Dr. James T. Lutz on 04/04/2006 with respect to her allowed CERVICAL AND THORACIC STRAINS. In his history taken from the injured worker, Dr. Lutz confirms that the injured worker has not undergone any surgical procedures related to her injury. The injured worker confirmed for Dr. Lutz that her current treatment regimen consists of medication only, and that she is not under any psychiatric care. On examination, Dr. Lutz found that the injured worker's neck revealed no structural deformities, swelling, signs of atrophy or discoloration. Generalized tenderness was noted posteriorly. Deep tendon reflexes and gross sensation appeared intact. Manual muscle testing of the shoulder musculature was normal. Examination of the injured worker's thoracic region revealed normal kyphotic curvature. Tenderness was localized over the mid to lower thoracic muscles. No spasms were found in the thoracic region.
 In the opinion of Dr. Lutz, the injured worker's allowed physical/orthopedic conditions have reached maximum medical improvement.
 Dr. Lutz also completed a Physical Strength Rating form, which is dated 04/04/2006, and which is attached to his narrative medical report. In the opinion of Dr. Lutz, the injured worker is capable of performing sedentary work. Sedentary work is defined as the ability to exert up to ten pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing or [sic] required only occasionally and all other sedentary criteria are met.
 The injured worker was also examined by Donald J. Tosi at the request of the Industrial Commission with regard to her allowed psychological conditions on 04/03/2006. *Page 10 
 In his report dated 04/12/2006, Dr. Tosi notes that the injured worker appeared to be a woman of average intelligence who is alert and oriented in all spheres. Dr. Tosi found her reality contact to be adequate and her concentration and attention to be mildly reduced. Dr. Tosi noted her comprehension of simple commands to be unimpaired and that her stream of thought and flow of ideas was normal. Dr. Tosi found no educational deficits. Dr. Tosi found the injured worker's thoughts to be clear, understandable, relevant and goal directed. He found her associations to be reasonably well-organized. He found her memory functions to be intact in all time frames. He found her immediate memory to be mildly reduced.
 Dr. Tosi further found that the injured worker can set goals, deal with people, and make judgments. He found that she can plan, and perform under normal work stress and work under specific instructions. He found that the injured worker is able to sustain focus and attention long enough to permit her to complete tasks in a suitable work environment. Dr. Tosi opines that the injured worker can complete a normal work day and work week and maintain regular attendance from a psychological standpoint.
 In the opinion of Dr. Tosi, the injured worker's allowed psychological conditions have reached maximum medical improvement with a resulting 19% whole person impairment. In his narrative report, as well on his Occupational Activity Assessment Report, dated 04/18/2006, Dr. Tosi opines that the injured worker has no work limitations, and that she is fully capable of returning to her former position of employment without psychological restrictions.
 In support of its position, the self-insured employer has submitted medical reports from Dr. David C. Randolph, dated 11/03/2005, and from Dr. Jennifer J. Stoeckel, dated 03/11/2006. Dr. Stoeckel examined the injured worker's file with regard to her psychological conditions.
 Dr. Stoeckel opines that the injured worker is not permanently and totally disabled as a result of her allowed psychological conditions in this claim. Dr. Stoeckel opines that the injured worker's ongoing psychological difficulties are not the result of her industrial injury and the conditions *Page 11 
allowed in it, but are instead related to an underlying personality disorder.
 Dr. Randolph examined the injured worker with regard to her allowed physical/orthopedic conditions in the claim. Dr. Randolph initially examined the injured worker in 1998.
 On physical examination, Dr. Randolph found that the injured worker demonstrates "almost nothing in the way of physical abnormalities other than subjective complaints." No objective abnormalities were found. Dr. Randolph notes that the injured worker has never demonstrated any evidence of objective neurologic abnormalities in her examinations, and that her single MRI scan showed no abnormalities. Dr. Randolph further found the injured worker's current subjective complaints grossly exceed her allowed conditions.
 In the opinion of Dr. Randolph, the injured worker is "perfectly capable of returning to her previous level of work activities if she were so motivated." Dr. Randolph further opines that the injured worker is not permanently and totally disabled as a result of her allowed cervical strain and thoracic strain.
 It is the finding of the Staff Hearing Officer, based upon the medical reports of Drs. Lutz, Tosi, Randolph, Stoeckel and Lundeen that the allowed conditions in the claim have reached maximum medical improvement and are permanent.
 It is axiomatic under Ohio Workers' Compensation laws that age alone may not be the sole causative factor to support an award of permanent and total disability compensation benefits. As noted by the courts of Ohio on a number of occasions, permanent and total disability compensation was never intended to compensate an injured worker for simply growing old. Age must be considered on a case by case basis, and cannot be viewed in isolation. State ex rel. DeZarn v. Indus. Comm. (1996), 74 Ohio St.3d 461 and State ex rel. Speelman v. Indus. Comm. (1992), 73 Ohio App.3d 757. This injured worker is presently 67 years old. Since the denial of her first permanent and total disability application, the Staff Hearing Officer finds that the only changes in circumstance relevant to the injured worker's claim has been her getting older. There have been no *Page 12 
surgeries, or additional conditions added to the claim. There has been no further period of temporary or partial disability.
 It is the finding of the Staff Hearing Officer that since the denial of the first permanent total disability application, there has been no change in circumstance related to this claim except for the injured worker's natural aging process.
 The Staff Hearing Officer further finds that it is expected of a injured worker under Ohio Workers' Compensation laws to participate in a return to work effort to the best of her ability or to take the initiate [sic] to improve her re-employment potential. While extenuating circumstances can excuse an injured worker's non-participation in re-educational and/or retraining efforts, an injured worker should not assume that participation or lack thereof will go unscrutinized. State ex rel. Cunningham v. Indus. Comm. (2001), 91 Ohio St.3d 261.
 The Staff Hearing Officer finds that this injured worker has not participated in a vocational rehabilitation program or any re-education effort/retraining effort designed to return to her to employment. The Staff Hearing Officer further finds that there are no extenuating circumstances in this claim that excuse the injured worker's non-participation in such efforts. The Staff Hearing Officer finds that the injured worker's decision to forego rehabilitation/retraining is a voluntary one, unrelated to her allowed conditions in this claim. The Staff Hearing Officer finds that the injured worker has not submitted any persuasive evidence that she is physically unable to participate in any vocational rehabilitation or retraining efforts. At hearing today, the injured worker testified that she undertook a typing class at Sinclair Community College in 2003/2004. The Staff Hearing Officer finds that the injured worker took this class for personal enrichment only, and not related to any return to work effort. The Staff Hearing Officer finds that the injured worker's attendance at a typing class demonstrates an ability to undertake a vocational rehabilitation program if she were so motivated.
 It is the finding of the Staff Hearing Officer that the injured worker is not permanently and totally disabled as a result of the allowed psychological conditions in this claim. This finding is based upon the medical report of Dr. Stoeckel, dated 03/11/2006 and upon the medical report of Dr. Tosi, *Page 13 
dated 04/12/2006. This finding is also based upon the Occupational Activity Assessment opinion of Dr. Tosi, dated 04/18/2006.
 It is the further finding of the Staff Hearing Officer, based upon the medical report of Dr. Lutz, dated 04/04/2006, that the injured worker is capable of performing sedentary work activities as related to her allowed CERVICAL STRAIN AND THORACIC STRAIN. This finding is also supported by the medical report of Dr. David C. Randolph, dated 11/03/2005.
 In further support of its position in this matter, the self-insured employer has submitted an extensive Vocational Evaluation report from Dr. Howard L. Caston, which is dated 06/06/2006. This is the second report regarding the injured worker completed by Dr. Caston. Dr. Caston notes that the injured worker's prior work history has provided her skills relating to other jobs including but limited to: cosmetic sales, sales cashier, customer service, counter sales, bookkeeper, billing clerk and teller. Dr. Caston opines that the injured worker has developed skills permitting her to perform customer service related duties and cashier work. Dr. Caston also opines that the injured worker's work skill set provides her with the capacity to work as a teller or customer service representative in a bank. Dr. Caston notes the injured worker has a high school G.E.D. and that she is therefore not at a severe disadvantage in seeking other employment. Because she is able to drive, and has been observed driving with no difficulty, Dr. Caston opines that the injured worker is able to access jobs in the geographic area of her residence. Because she has been observed performing extensive driving, shopping and carrying objects, Dr. Caston opines that the injured worker is capable of accessing work. Dr. Caston opines that the injured worker's current restrictions do not prevent her from engaging in her former position of employment as a beauty advisor. According to Dr. Caston, if this job is restricted to less strenuous work, it can be easily modified to fit her circumstance. Dr. Caston also opines that the injured worker has the skills and abilities that would permit her to perform jobs not necessarily closely related to her job work.
 Dr. Caston also attached to his narrative report a non-complete representative sample of job openings, in the area of the injured worker's residence, that she could perform *Page 14 
taking into account the restrictions in this claim. These identified jobs include: accounts payable clerk, collections worker, customer service worker, accounting clerk, teller, and administrative assistant.
 The Staff Hearing Officer finds that the injured worker's current age is only a moderate barrier to her return to employment. As noted above, the injured worker's age alone may not be the sole causative factor to support an award of permanent and total disability compensation benefits. In the present claim, the injured worker has had every opportunity over the years to seek out retraining and re-employment so that she can return to work force. She has undertaken no such effort. Further, the injured worker has refused to participate in any vocational rehabilitation program or retraining effort under either the auspices of the self-insured employer or the Bureau of Workers' Compensation.
 In the present claim, the Staff Hearing Officer does not find the injured worker's age, by itself to support her application. The Staff Hearing Officer finds that this is a circumstance of an injured worker undertaking no action to rehabilitate herself or to acquire sufficient skills to return to the work force. The Staff Hearing Officer finds this was a voluntary decision on the party [sic] of the injured worker and that the simple aging process in this claim is unrelated to her ability to secure sedentary employment as identified by Dr. Lutz.
 The Staff Hearing Officer further finds that the injured worker's high school G.E.D. and her extensive work experience provide her with a sufficient skill set to return to sedentary work as identified by Dr. Lutz and by Dr. Caston. The Staff Hearing Officer finds that the injured worker has a sufficient intellectual basis to engage in whatever retraining is necessary to meet a sedentary work job environment as identified by Drs. Caston and Lutz. Her ability to attend a typing class is further evidence in support of this finding.
 In conclusion, the Staff Hearing Officer finds, based upon the reports of Drs. Lutz, Tosi, Stoeckel, Randolph and Caston that the injured worker retains the physical and psychological functional capacity to perform employment activities of a sedentary nature. The Staff Hearing Officer further finds that the injured worker is sufficiently capable of meeting *Page 15 
sedentary work requirements from both an academic and an intellectual level as reflected in the findings set forth above.
 It is therefore the order of the Staff Hearing Officer that the injured worker's application for permanent and total disability benefits be denied.
 This order is based upon the reports of Drs. Lutz, Tosi, Stoeckel, Randolph and Caston.
 {¶ 21} 16. On May 18, 2007, relator, Gwen Bree Eden, filed this mandamus action.
Conclusions of Law: {¶ 22} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 23} During her hearing testimony which was recorded and transcribed for the record, the following exchange occurred between relator and her counsel:
 [Relator's counsel] Just to point out, your condition has gotten so worse that you were actually concerned about whether there was some other problem going on and that's why you saw a specialist here recently?
 [Relator] Yeah, because I'm thinking — you know, with the headaches I'm having, I'm thinking, you know, what is going on that's increased so bad with a progression of loss of memory and nerves and anxiety to the point that I almost have anxiety attacks anymore.
 {¶ 24} Quoting her response to her counsel's question, as above noted, relator asserts that the commission abused its discretion when its SHO concluded in his April 17, 2007 order, that "since the denial of the first permanent total disability application, there has been no change in circumstance related to this claim except for the injured worker's natural aging process." According to relator, the SHO's conclusion *Page 16 
is "obviously contrary to the evidence on record." (Relator's brief, at 7.) However, relator fails to point out what evidence on record the SHO's conclusion is obviously contrary to, except relator's hearing testimony quoted above.
 {¶ 25} The obvious answer to relator's argument is that the commission did not rely upon her hearing testimony. Nowhere in the order of April 17, 2007 does the SHO state reliance upon relator's hearing testimony.
 {¶ 26} Moreover, even if we were to accept relator's testimony as previously quoted, it is apparent that the question posed to her makes no effort to limit the query to the allowed conditions of the industrial claim. Relator's general health may have gotten worse as relator has testified, but the commission must only consider the medical evidence addressing the allowed conditions of the claim. The question, and relator's response to it, fail to provide any meaningful information regarding the allowed conditions of the industrial claim.
 {¶ 27} In her brief, relator goes on to say that she would further object to the vocational analysis of the SHO. Id. at 7. However, relator fails to explain her objection other than to offer the conclusion that her advanced age and limited education combines with her industrial injuries to produce PTD. In effect, relator invites this court to reweigh the nonmedical factors, something this court may not do in mandamus.
 {¶ 28} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1